GRIFFIS, P.J.,
for the Court:
¶ 1. This case involves a wrongful-death action against Cleveland Gowdy and Schneider National Carriers, Inc. for the death of Marie Payne. Her wrongful-death beneficiaries, Ronald and Thomas Payne, appeal a jury verdict that found Cleveland not negligent in Marie’s death. The Paynes argue that it was reversible error for the circuit court to: (1) allow evidence of Marie’s prior fall in May 2008, *797 (2) limit the testimony of their accident reconstructionist, (3) allow testimony of the defendants’ accident reconstructionist, (4) fail to grant their motion for a directed verdict, or a peremptory instruction, and refuse jury instruction P-14, and (5) deny their motion for a JNOV or a new trial. We find no error and affirm.
FACTS
¶2. On September 5, 2008, Marie was seventy-eight years old. At approximately 9:00 a.m. that morning, Marie walked out of Jeff Anderson Regional Medical Center on the third floor of the parking garage.[1] She was walking to her car. She did not make it to her car. Instead, she suffered a tragic and painful death.
¶ 3. The following is an accurate depiction of the parking garage offered by the Paynes’ expert, Tim Corbitt. This picture will be used throughout this opinion to describe the events that occurred.
*798 [[Image here]]
¶ 4. The elevator is at top of this picture, which depicts the south end and the southwest corner of the parking garage. The bottom of this picture depicts the north end. The right side of this picture depicts the west end. The left of this picture *799 depicts the interior of the parking garage, and there are additional rows for vehicles to park and travel. The parking garage provides for one lane of traffic that travels in one direction, from the bottom of the picture to the top. At the top of the picture, traffic must turn to the left to continue to additional parking or to exit the garage. The parking spaces are angled so that vehicles may park on either the left or the right. There is no designated walkway for pedestrians.
¶ 5. When Marie exited the hospital and entered the parking garage, she crossed the lane of traffic, which turned to the left, and was walking in a northerly direction behind the cars parked on the left side (her right) of this picture. She was walking toward her car, a white Ford Taurus, that was parked on the right side of this picture (the west side of the parking garage).' Her car is depicted as one of the cars on the bottom-right side of the picture.
¶ 6. Cleveland was driving his Chevrolet Silverado pickup truck on the third floor of the parking garage. He was traveling in the opposite direction of Marie. Cleveland rounded the corner shown at the bottom of the picture and was driving in a southerly direction (toward the top of the picture). Cleveland’s truck struck and killed Marie.
¶ 7. On January 20, '2009, Ronald and Thomas, Marie’s adult sons, filed a wrongful death action in the Lauderdale County Circuit Court against Cleveland. The complaint asserted claims for negligence, negligence per se, and negligent/intentional infliction of emotional distress.
¶ 8. The complaint was amended to include Schneider National Carriers, Inc. as a defendant. The Paynes asserted that Cleveland was acting in the course and scope of his employment at the time of the accident, and Schneider was vicariously liable for Cleveland’s negligence. Cleveland was employed by Schneider as an over-the-road truck driver. He was at the parking garage on September 5, 2008, on his way to a “recertification physical” as required by the United States Department of Transportation regulations. According to the form of the verdict, the jury did not reach the issue of whether Schneider was negligent. Instead, the jury’s deliberation ended when it found Cleveland was not negligent.
¶ 9. At trial, the jury was presented with the events that surrounded Marie’s tragic death. No eyewitness saw Cleveland’s truck hit and run over Marie. The issue presented to the jury was not whether Cleveland caused Marie’s injuries and death. He did. Instead, the jury considered and decided whether Cleveland breached the duty owed to Marie, i.e. whether he was negligent in backing up his truck at the time he hit and ran over Marie.
¶ 10. The Paynes presented evidence that Marie walked past the driver’s side of Cleveland’s truck. She would have been on Cleveland’s left, and his truck would have been on her left.
¶ 11. Diane Gowdy, Cleveland’s wife, was with him that morning and was riding as a passenger. Diane testified that she alerted her husband to an open parking spot that he had just passed on his left.
¶ 12. Cleveland testified that as he passed a vacant parking spot, he stopped his truck and attempted to back up to park in the vacant space. Cleveland testified that, before putting his truck into reverse, he came to a full and complete stop. He turned his head and looked to the left, turned his head and looked to the right, and then turned his head back to the left and looked again. Before he placed his pickup into reverse, Cleveland placed his arm across the seat, in front of the rear- *800 view window, and looked back through the glass while he was backing up. Cleveland testified that he was looking through the back glass the entire time he was backing up. Diane was in the truck with him, and she too was looking behind as they were backing up.
¶ 13. Cleveland testified that, while backing up, he did not even push the accelerator. The pickup just gently rolled back. He backed up about three or four feet before he felt a bump. The bump occurred when Cleveland rolled over Marie’s body. Cleveland got out of the truck and found Marie lying underneath his pickup. Cleveland testified that at no time did he ever see Marie behind his pickup.
¶ 14. Darreal Thompson, a Meridian police officer, testified about the layout of the parking garage. He said that the parking garage has one lane of traffic with spaces for cars to park on the left and right sides. He identified a photograph that showed a clear view from the area of impact to the far end of the parking garage. Officer Thompson testified that he was the first person on the scene and arrived just a few seconds after Marie was run over.
¶ 15. After immediately calling for emergency assistance, Officer Thompson testified that he spoke to both Cleveland and Diane. Officer Thompson testified that both admitted that, while driving forward, they saw Marie walking in the parking garage. Officer Thompson stated that Cleveland admitted that Marie walked by him on the driver’s side of his truck just before he started backing up. He testified:
.Q. Where did [Cleveland] say he saw [Marie] walking?
A. He said he saw her walk past his truck.
Q. In the parking garage?
A. Yes, sir.
Q. And did [Cleveland] say at what point in time he saw her walking in the parking garage?
A. When he was moving forward.
¶ 16. Officer Thompson then testified that he got down on his knees to talk to Marie. Her body was underneath the truck, and she was located between the front and rear tires. Her head and body were completely under the truck, and her feet were slightly sticking out from under the left (or driver’s) side.
¶ 17. Mike Mitchell, the Security Director at Anderson Hospital, arrived at the scene within minutes of the incident. Mitchell testified that traffic is one-way in the parking garage, and that there is not a designated area for pedestrians to walk. Mitchell confirmed Officer Thompson’s testimony that Cleveland admitted that he saw Marie just before backing up. Mitchell also reviewed the video surveillance footage for the parking garage and determined that Marie exited the elevators at the south end of the parking garage and walked along the left side of the parking lane towards the area of impact.
¶ 18. Tim Corbitt was allowed to testify as an expert witness in accident reconstruction. Corbitt testified that he reconstructed the incident and prepared several to-scale diagrams. (One of the diagrams Corbitt prepared is the picture that is included in this opinion above.) Corbitt explained that Marie exited the elevators at the southern end of the parking garage (the top of the picture), walked on the side of the parking lane facing traffic for over 100 feet, passed by the left (or driver’s side) of Cleveland’s truck, and then walked behind Cleveland’s truck and across the open traffic lane to get to her white Ford Taurus. When Cleveland backed up, the truck’s rear bumper struck Marie’s leg first, and then she was knocked down to *801 the ground. Corbitt testified that Marie was upright at impact, was first hit by the truck’s bumper, and was then run over by the tire.
¶ 19. Corbitt also testified that Marie was visible at all times while Cleveland was backing up. Corbitt testified that Marie was five feet (sixty inches) tall and the truck’s tailgate was fifty-one inches tall. Thus, Corbitt explained that because she was standing upright when she was hit, she was nine to ten inches taller than the tailgate of the truck. Corbitt also testified:
Q. What should [Cleveland] do to keep a proper lookout in this situation?
A. You have to maintain a proper lookout for your travel.
Q. All right. Did [Cleveland] keep a proper lookout in the garage that day?
A. Apparently not, no sir, because the wreck happened.
Q. All right. Tell us what evidence you are basing on that [Cleveland] did not keep a proper lookout?
A. The way the pedestrian was struck and the fact that he was traveling backwards and still striking a pedestrian that should be visible.
Q. What if he says he didn’t see her, backing up?
A. She’s behind the truck; she has to be visible if you are looking.
Q. Is he supposed to see what he should see or what’s able to be seen?
A. Yes, sir.
¶ 20. Corbitt further testified that the fact that Cleveland missed the parking space on his left was proof that he was not paying attention. Corbitt opined that Cleveland did not keep a proper lookout, did not see what he should have seen, did not keep his vehicle under proper control, and failed to yield the right of way.
¶ 21. Dr. Joey Parker was offered by the defendants (collectively “Cleveland”)[2] as an expert witness in accident reconstruction. Dr. Parker testified that at numerous times while Cleveland was backing up, his path of vision behind him would have been obscured. Cleveland claims that this corroborated the testimony of Corbitt, who also testified that there were vision obstructions that would have restricted Cleveland’s field of view. Ultimately, Dr. Parker disagreed with Cor-bitt’s testimony that the mere happening of the accident was proof that Cleveland failed to keep a proper lookout.
¶ 22. A jury trial was held from August 9 through August 13, 2010. The jury returned a verdict in favor of Cleveland. After the verdict was rendered and a final judgment entered, the Paynes filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. The circuit court denied the Paynes’ motion. From this judgment, the Paynes timely appealed, and the supreme court deflected the case to this Court for. review.
ANALYSIS
1. Whether the circuit court erred when it allowed unfairly prejudicial evidence of an unrelated prior fall by Marie.
¶ 23. The Paynes argue that the circuit court erred when it allowed evidence of an unrelated prior fall by Marie that occurred in May 2008, four months before the September 5, 2008 incident. “This Court reviews the trial court’s deci *802 sion to admit or exclude evidence under an abuse of discretion standard of review.” Smith v. State, 986 So.2d 290, 295 (¶ 12) (Miss.2008). We will affirm the trial court’s ruling “[u]nless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice a party in a civil case, or the accused in a criminal case.” Jones v. State, 918 So.2d 1220, 1223 (¶ 9) (Miss.2005).
¶ 24. Before trial, the Paynes filed a motion in limine to exclude any evidence of prior falls by Marie.[3] They argued that there were only three reported falls during her seventy-eight-year life. Hence, they argued that alleged falls prior to the September 5, 2008 incident were not relevant under Mississippi Rule of Evidence 402 or should be excluded as unfairly prejudicial under Mississippi Rule of Evidence 403.
¶ 25. The Paynes argue that Cleveland made several attempts to introduce evidence of Marie’s prior falls to show that she was a fall risk or had a tendency or predisposition to fall. The circuit court refused to allow the evidence to be admitted for that purpose. Cleveland then argued that the evidence was offered to impeach the testimony of the Paynes, the wrongful death beneficiaries. They testified that they were a close-knit family, but they admitted that they were not aware that Marie had fallen a few months earlier and broken her shoulder. The circuit court ruled that Marie’s May 2008 fall was admissible only to impeach the testimony of the wrongful death beneficiaries and only if the beneficiaries said Marie had not fallen before the incident.
¶ 26. The deposition testimony of Marie’s doctor, Dr. Rhonda Wilson, was read to the jury. Dr. Wilson testified:
Q. Okay. Well, do you know whether in May of 2008 [Marie] had complained of having fallen?
A. There was — in May of 2008, there, the note indicates that site said she had fallen at that point since I saw her last and had sustained a fracture to her right shoulder. But-so she said she was progressing okay from that standpoint.
The Paynes argue that this testimony was devastating to their case and was used by Cleveland in closing to argue that Marie spontaneously fell before Cleveland backed over her.
¶ 27. Cleveland responds that the Paynes opened the door for this testimony. Defense counsel asked Dr. Wilson the following question about the relationship between Marie’s prior falls and her fall behind Cleveland’s pickup:
Q. As far as if someone tries to suggest that Dr. Wilson’s record mentioned a fall and because of that Marie Payne fell before she was struck by this truck, you are not saying that here today, are you?
A. I’m not saying that, and I don’t know that anyone would know— could possibly know that.
Thus, Cleveland argues that the Paynes, not the defense, linked the May 2008 fall to Marie’s death on September 5, 2008. Thus, he contends the jury’s consideration of this evidence resulted from the Paynes’ use of this evidence. He claims that since the Paynes came forward with this evi *803 dence, any reference to Marie’s prior falls was properly before the jury.
¶ 28. Having reviewed this testimony and the limited manner in which it was used in closing argument, we cannot say that the circuit court’s decision was an abuse of discretion. Certainly, Dr. Wilson’s testimony made it clear that there was no link between Marie’s fall in May 2008 and the incident that is the subject of this litigation. Accordingly, we find no error in this issue.
2. Whether the circuit court erred in limiting the testimony of Tim Cor-bitt, the Paynes’ accident recon-structionist.
¶ 29. Next, the Paynes argue that it was error for the circuit court not to allow their accident-reconstruction expert, Tim Corbitt, to testify about the body movements of Marie when she was struck by Cleveland’s truck. When Corbitt attempted to testify about his opinion as to the natural movement of a person struck in the back of the leg by the bumper of a truck similar to Cleveland’s truck, Cleveland objected. The circuit court sustained the objection and found that the testimony was hot included in Corbitt’s expert report. The court then ruled that Corbitt could not explain to the jury his conclusions about how Marie’s body fell.
¶ 30. “This Court reviews the trial court’s decision to admit or exclude evidence under an abuse of discretion standard of review.” Smith, 986 So.2d at 295 (¶ 12). We will affirm the trial court’s ruling “[ujnless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice a party in a civil case, or the accused in a criminal case.” Jones, 918 So.2d at 1223 (¶ 9). Rule 702 of the Mississippi Rules of Evidence requires that the trial court be the gatekeeper in evaluating the admissibility of expert testimony. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 40 (¶ 25) (Miss.2003).
¶ 31. The Paynes argue that, during discovery, Corbitt submitted a signed report that stated that the tire rolled over Marie’s abdomen. The report also included the measurements of the accident scene itself. Corbitt opined that Cleveland was backing up when his vehicle struck Marie, she traveled more than the rear overhang, which is approximately 3.4 feet, then the rear tire rolled over her mid-torso to chest area prior to stopping. Thus, the Paynes argue that Cleveland was provided with Corbitt’s opinions in his accident-reconstruction report, which addressed the movements of Marie as the truck moved over her body.
¶ 32. Cleveland contends that Corbitt was not designated as an expert in the field of biomechanics and that his report did not contain any information regarding the impact his pickup had on Marie’s body. When Corbitt attempted to testify about the natural motion of a human body when struck by a pickup truck, Cleveland objected on two grounds. First, Cleveland claimed that Corbitt was not qualified to give an opinion regarding the movement of a human body because he had no medical training. The circuit court allowed the Paynes to make a proffer of Corbitt’s proposed testimony and allowed the defense to voir dire Corbitt. Second, • Cleveland claimed that Corbitt’s proposed testimony about the movement of a human body when it is struck by a vehicle was not disclosed in his expert report. Cleveland argued that Corbitt admitted, when he was questioned. about his expert report, that this information was not disclosed. As a result, the circuit court did not allow Cor-bitt to testify as to this opinion because it was not disclosed in the report.
*804 ¶ 33. We conclude that the circuit court was within its discretion to limit Corbitt’s testimony to the information that was previously disclosed. We find no merit to this issue.
3. Whether the circuit court erred in allowing accident-reconstruction testimony from defense expert Dr. Joey Parker.
¶ 34. The Paynes argue that it was error for the circuit court to allow Dr. Joey Parker to testify as an accident-reconstruction expert and to offer conclusions as to the position and body movement of Marie. The Paynes argue that Dr. Parker testified that he did not perform a complete accident reconstruction and was not taking a position as to what happened that day. Instead, Dr. Parker only conducted a “visibility analysis.” Nevertheless, over the Paynes’ objection, Dr. Parker was allowed to rebut Corbitt’s opinions regarding Marie’s body position, which led to improper speculation that Marie fell down or was not visible before being struck. The Paynes argue that the circuit court erred when it allowed Dr. Parker’s unsupported testimony after limiting the testimony of Corbitt, who had conducted a full accident reconstruction.
¶ 35. The Paynes argue that the admission of Dr. Joey Parker’s testimony on Marie’s body movements was unfairly prejudicial because it allowed the defense expert to speculate that Marie may have been out of view or had fallen behind the truck before she was struck. No medical expert witness or eyewitness testimony supported this conclusion. In fact, the only medical expert that testified on the issue said that Marie’s injuries confirmed that the initial contact was from Cleveland’s truck’s bumper hitting her leg. In other words, Marie was standing upright with nine to ten inches of her head sticking over the tailgate when she was hit by the truck in the leg. Also, in an effort fo avoid giving damaging testimony against Cleveland, Dr. Parker said that he could not establish the exact position of Marie after she was run over.
¶ 36. Cleveland argues that Dr. Parker never testified about how Marie Payne’s body would have moved if she was struck by a pickup. Instead, Dr. Parker testified that there was a possibility that Marie could have “gone right under the truck without being struck.” At trial, the Paynes did not object to the testimony on the grounds that Parker was unqualified to give this opinion or that the opinion was not properly disclosed. The Paynes only objected to the leading form of the question, not to the substance of the question.
¶ 37. Without regard to whether it was error to allow Dr. Parker to testify as to these opinions, we find that the Paynes failed to make a contemporaneous objection and bring this matter to the circuit court’s attention. Therefore, the issue is waived on appeal. Carr v. State, 655 So.2d 824, 832 (Miss.1995).
4. Whether the circuit court erred in denying plaintiffs jury instructions P-1 and P-14 and not instructing the jury regarding the duty to see what one should have seen.
¶ 38. The Paynes argue that the circuit court committed error when it denied jury instructions P-1 and P-14.
A. Jury Instruction P-1 — a peremptory instruction.
¶ 39. At the close of the evidence, the Paynes moved for a directed verdict and submitted jury instruction P-1. This proposed instruction was peremptory. The instruction stated that Cleveland was negligent as a matter of law. The circuit *805 court had previously denied the Paynes’ motion for a directed verdict, and it had denied jury instruction P-1.
¶40. The trial considered the events that surrounded the tragic death of Marie. There were no eyewitness who saw Cleveland’s truck hit and run over Marie. The issue presented, was not whether Cleveland caused Marie’s injuries and death. Instead, the question presented was whether Cleveland was negligent in backing up his truck at the time he hit and ran over Marie.
¶41. In Entergy Mississippi Inc. v. Bolden, 854 So.2d 1051, 1054-55 (¶ 7) (Miss.2003), the supreme court held:
The standard of review for whether a peremptory instruction should be granted is the same as the standard for a directed verdict. The standard of review in cases where a directed verdict has been granted is as follows: “this Court conducts a de novo review of motions for directed verdict. If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted.” Additionally, this Court has held that “a trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree.”
(Internal citations omitted).
¶ 42 In Ramage v. Kelly, 253 Miss. 582, 585-86, 176 So.2d 324, 325-26 (1965), the supreme court held:
Although the backing of a motor vehicle is not in and of itself negligence, ... in backing a vehicle a motorist has the duty of exercising ordinary and reasonable care under the circumstances[,] to avoid injury to the person or property of another. Accordingly, backing without taking precautions appropriate and necessary under the circumstances constitutes negligence. Generally, issues of negligence involving the backing of an automobile into a public street and collision with another vehicle aré questions of fact for the jury.
(Internal citations omitted).
¶ 43. At trial, the parties presented conflicting testimony as to what Cleveland saw or should have seen. Corbitt testified that Cleveland should have seen Marie while he was backing his truck. Dr. Parker testified that Cleveland could not have seen Marie while she was walking behind his pickup.
Q. So, Dr. Parker, if [Marie] had been to the bottom of the cone behind this vehicle when [Cleveland] began to back, would [she] have been visible to [him] as she moved toward the top of the diagram?
A. No, sir.
Dr. Parker’s testimony that Marie was not always visible to Cleveland when she was outside his “cone of vision” corroborated Cleveland’s testimony that he looked to his right, to his left, and back, over his shoulder while he was backing up and did not see Marie.
¶44. Based upon the evidence from Dr. Parker and Cleveland, the jury could have found that Cleveland was not negligent. Thus, the circuit court should not have granted a peremptory instruction as to liability. The general rule is, where there is a conflict in the evidence, the question of negligence is for the determination of the jury. Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 149, 141 So.2d 226, 232 (1962). A person who is backing a vehicle is not negligent per se as long as he uses reasonable care, reasonable precautions, and proper observations by looking to the left, right, and looking back. Id. at 144, 141 So.2d at 230. Thus, the circuit court was correct to refuse jury *806 instruction P-1, a preemptory instruction that Cleveland was negligent.
B. Instruction P-14 — the duty to see what he should have seen.
¶ 45. Next, the Paynes argue that the circuit court committed error when it refused to give jury instruction P-14. Jury instruction P-14 read:
You are instructed that a motorist has a duty and is responsible for seeing what he should have seen under the circumstances. Failure to do so is negligence. Therefore, if you find from a preponderance of the evidence in this case that [Cleveland] was driving his vehicle and failed to see Marie Payne before striking her and that such failure to see Marie Payne was negligence and this negligence was a proximate cause or proximate contributing cause of Marie Payne’s injuries, then your verdict shall be for the Plaintiffs.
¶ 46. During the jury instruction conference, the court considered several of the Paynes’ instructions on the duty of care. The following exchange occurred between Mr. Wilkins (the Paynes’ attorney), Mr. Dunbar (Schneider’s attorney), Mr. Cluck (Cleveland’s attorney) and the circuit court:
Wilkins: There is a series of instructions here that we agreed to modify, and it is in the second paragraph of each one. So, for example, in P-11 the first paragraph is agreed to, and then the second paragraph, “Therefore, if you find from a preponderance of the evidence in this case that the Defendant Cleveland Gowdy was driving his vehicle and failed to keep it under proper control under the circumstances to avoid injury to Marie Payne, then he was negligent.” If I do that[,] I believe that would be agreed to.
Dunbar: That’s correct.
Cluck: That’s correct.
Court: All right.
[[Image here]]
Court: As amended, that’s given....
Wilkins: P-12 is agreed to, with the change to the second paragraph that will say — we will delete every word after “Marie Payne” in the second paragraph and then say, “To avoid injury to Marie Payne, then he was negligent,” period. So basically, we are making the same change to that second paragraph.
[[Image here]]
Court: Okay. As amended, is there any objection?
Dunbar: No, sir.
Cluck: No, sir.
Court: That will be given as amended.
Wilkins: P-13 will be withdrawn.
Court: Withdrawn. Okay.
Wilkins: P-14 has been agreed to with the amendment.
Dunbar: I’m sorry, I don’t agree to that one. It is peremptory in the sense that he had to have seen Ms. Payne.
Wilkins: Your Honor, this is straight out of the Utz case and the Tipper versus Hunter case that the motorist does have a duty to see what he should have seen under the circumstances.
Dunbar: Exactly.
Wilkins: It is not an absolute duty. It is what he should see under those existing circumstances.
Dunbar: This one says that — it is peremptory in the sense that it is finding that Ms. Payne should have been seen by Mr. Gowdy. And there are circumstances that are clearly in the evidence that say there was a likelihood *807 or at least a possibility that he could not have seen her.
Court: I think in this case we have given — these other instructions are set out that he’s got a duty to keep a reasonable and proper lookout to the front, back and sides, and if he didn’t do that, he’s negligent. I think that’s sufficient and — what is this number? I don’t see a number on it.
Dunbar: P-14.
Court: 14, I’m going to refuse.
¶47. Defense counsel’s objection as to instruction P-14 was that the second paragraph of the instruction was peremptory in nature. In fact, he argued that the failure to see Marie was the very issue the jury had to resolve. The defense claimed that there was conflicting testimony and evidence about the cause of the accident. As previously discussed, a peremptory instruction was not proper. Based on the language used in the jury-instruction conference, it appears that the trial judge realized that this language could be confusing to the jury. More importantly, the trial judge recognized that the duty to see what should have been seen is included in the duty to keep a proper lookout. We must determine whether the jury was adequately instructed without the language in instruction P-14.
¶ 48. Jury instructions should be read as whole and not in isolation. Walker v. State, 913 So.2d 198, 234 (¶ 132) (Miss.2005) (quoting Parks v. State, 884 So.2d 738, 746 (¶ 26) (Miss.2004)). “[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Montana v. State, 822 So.2d 954, 958 (¶ 10) (Miss.2002). “[J]ury instructions are within the sound discretion of the trial court.” Rubenstein v. State, 941 So.2d 735, 787 (¶ 239) (Miss.2006) (citing Goodin v. State, 787 So.2d 639, 657 (¶ 60) (Miss.2001)). “A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury’s finding on that theory.” Montana, 822 So.2d at 962 (¶ 29) (citing Jackson v. State, 645 So.2d 921, 924 (Miss.1994)). However, a trial court may refuse a jury instruction when it is an incorrect statement of law, is fairly covered in other instructions, or has no foundation in the evidence. Ruffin v. State, 992 So.2d 1165, 1176 (¶ 33) (Miss.2008). Here, the question is whether this instruction was “fairly covered in other instructions.”
¶ 49. The circuit court gave the following instructions to the jury as to the duties Cleveland owed Marie:
Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may be consistent either in doing — excuse me — may consist in either doing something that a reasonably careful person would not do under like circumstances or in failing to do something that a reasonably careful person would do under like circumstances.
An element or test of proximate cause is that an ordinary prudent person should reasonably have foreseen that some injury might possibly occur as a result of their negligence. It is not necessary to foresee the particular injury, the particular manner of the injury [,]or the extent of the injury.
You are instructed that a motorist has a d,uty to keep his vehicle under proper control under the circumstances. Failure to do so is negligence. Therefore, if you find from a preponderance of the evidence in this case that the Defendant Cleveland Gowdy was driving his vehicle and failed to keep it under proper con- *808 tool under the circumstances to avoid injury to Marie Payne, then he was negligent.
You are instructed that a motorist has a duty to keep a reasonable and proper lookout to the front, back and sides for other vehicles and pedestrians and anticipate the presence of other vehicles and pedestrians using a parking lot under the circumstances. Failure to do so is negligence.
Therefore, if you find from a preponderance of the evidence in this case that the Defendant Cleveland Gowdy was driving his vehicle and failed to keep a reasonable and proper lookout to the front, back and sides for other vehicles and pedestrians under the circumstances to avoid injury to Marie Payne, then he was negligent.
You are instructed that a motorist has a duty to exercise ordinary and reasonable care under the circumstances in backing up his vehicle. Before starting to back up, the motorist must look to see that the way is clear. If the driver cannot see behind his vehicle, he must take reasonable precautions before backing up by looking to the right and left and behind him. The driver must also continue to look to the right and left and behind him while he is in the act of backing up his vehicle. Failure to do so is negligence.
Therefore, if you find by a preponderance of the evidence that the Defendant Cleveland Gowdy did not take reasonable precautions to see Marie Payne, under the circumstances present at the time of his collision with her, then the Defendant Cleveland Gowdy is guilty of negligence.
You are instructed that the driver of a motor vehicle is not absolutely or automatically liable to anyone under any circumstances for injuries occasioned by his or her vehicle; but every driver must exercise ordinary care to avoid injuries to person or property. Therefore, if you find from a preponderance of the evidence that the Defendant Cleveland Gowdy used ordinary care in the operation of his vehicle under the circumstances, then you must find for the defendants.
(Emphasis added).
¶ 50. The Paynes argue that instruction P-14 is taken almost verbatim from Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450 (Miss.2010) and Tippit v. Hunter, 205 So.2d 267 (Miss.1967). They argue that it is a correct statement of Mississippi law, and the Paynes were severely prejudiced by not being able to provide this instruction to the jury.
¶ 51. In Utz, Preston Utz was killed when his vehicle ran into the back of an eighteen-wheel truck. Utz, 32 So.3d at 456 (¶ 1). Utz’s wife filed a wrongful-death action against the truck’s driver and owner. The issue was whether the truck owner failed to provide reflective tape on the truck, known as conspicuity tape. The jury returned a verdict for the truck driver and owner. Id. at (¶ 2). Unrelated issues presented concerned Preston’s drug use before the accident. Id. at 458 (¶ 11). Tim Corbitt testified “that a reasonably prudent person would have seen only the lights of the trailer on the night of the accident as opposed to the entire outline of the trailer, had it had the required conspi-cuity tape,” and that federal regulations required the reflective tape on the back of the truck. Id. at 469 (¶ 53).
¶ 52. At trial, the plaintiff argued that the circuit court erred in giving this instruction:
You are instructed that under the law of this state a motorist has an absolute duty to see that which is in plain view or open and apparent and to take notice of *809 obvious objects and vehicles ahead on a highway. A motorist also has a duty to be alert on a highway and has no right to assume a highway is clear.
If you find from a preponderance of the evidence that the trailer pulled by Anthony Q. Hunter would have been visible to a reasonably prudent driver in the position of Preston Utz at a point where the accident could have been avoided through the exercise of reasonable care, then you must find Preston Utz was negligent.
If you find that negligence on the part of Preston Utz, if any, was the sole proximate cause of the accident, then it is your sworn obligation to return a verdict for the Defendants.
However, if you find that this negligence on the part of Preston Utz, if any, was a proximate contributing cause of the accident, then you must assign a percentage of fault to Preston Utz, as explained later in these instructions.
Id. at 481 (¶ 101). The supreme court concluded that although “the instruction should not have included the term ‘absolute,’ ... the instruction did not rise to the level of reversible error.” Id. at (¶ 102). The court reasoned:
In Dennis [ex rel.] Cobb v. Bolden, 606 So.2d 111, 118-14 (Miss.1992) this Court had held:
The driver of a car is charged with the duty of keeping a proper lookout and being on alert for vehicles, objects and persons ahead in the highway. Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962); Belk v. Rosamond, 213 Miss. 633, 57 So.2d 461 (1952). The driver is charged with the absolute duty of seeing what he should have seen. Tippit v. Hunter, 205 So.2d 267 (Miss.1967); Campbell v. Schmidt, 195 So.2d 87 (Miss.1967); Layton v. Cook, 248 Miss. 690, 160 So.2d 685 (1964). He is also required to have his car under proper control, to be on the alert on the highway, and avoid striking plain objects. Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss.1984); Shideler v. Taylor, 292 So.2d 155 (Miss.1974).
Bolden, 606 So.2d at 113-14 (emphasis added). While Bolden states that the driver has an “absolute” duty to see what he should have seen, the case-law on which it relies for authority did not require an “absolute” duty. Id. (citing Tippit v. Hunter, 205 So.2d 267 (Miss.1967); Campbell v. Schmidt, 195 So.2d 87 (Miss.1967); Layton v. Cook, 248 Miss. 690, 160 So.2d 685 (1964)). Notwithstanding the use of the term “absolute,” giving the instruction is not reversible error. But for the use of “absolute,” the statement of daw was accurate. The instruction did not place, as [the plaintiff] claimed, an absolute duty on Preston to avoid the collision. The instruction provided that the jury should fínd Preston neyliyent only if the trailer would have been visible to a reasonably prudent driver in Preston’s position!,] and the accident could have been avoided throuyh the exercise of reasonable care. Further, [the plaintiffs] argument that [caselaw] provides no absolute duty to avoid a collision is somewhat misplaced, because the instruction does not concern a vehicle following too closely behind another, and the record contains no facts that Hunter’s vehicle suddenly darted in front of Preston’s vehicle. We find that the instruction should not have included the term, “absolute,” [but] the instruction did not rise to the level of reversible error.
Utz, 32 So.3d 450, 481 (¶ 102) (emphasis added).
*810 ¶ 53. The question presented in this appeal is whether it was reversible error for the trial court to exclude an instruction that discussed Cleveland’s “duty of seeing what he should have seen.” Id. A driver’s duty to “see what he should have seen” is part of a broader concept that a driver has duty to keep a proper lookout and keep his car under control. Id.
¶ 54. In Tippit v. Hunter, 205 So.2d 267, 269 (Miss.1967), the supreme court considered a negligence action that resulted from a head-on collision. The only eyewitnesses were the drivers who both testified that the accident occurred in their lane. Id. Tippit was the plaintiff and she suffered significant injuries. The jury returned a $2,000 verdict for her. Id. at 270. She filed a motion for a new trial and an appeal. Id. The supreme court found no error in the instructions. The court held:
[ T]he mere fact that one of the parties testified that she kept a lookout “down the road in front of me” did not prevent the court from granting an instruction as to her failure to keep a lookout. This is especially true since appellee, Mrs. Hunter, testified that “just out of nowhere came the Ford Falcon.” The driver of an automobile is chargeable with knowledge of all conditions which would be obtainable by the reasonable exercise of his faculties. It is his duty to see that which is in plain view or open and apparent and to take notice of obvious dangers. He must be regarded as having seen what he would have necessarily seen had he been looking, and if an automobile driver fails to reasonably observe that which was apparent and within clear view, the jury can reasonably determine from the circumstances that he was not keeping a proper lookout.
Id. at 271 (emphasis added and internal citations omitted).
¶ 55. In Bolden, 606 So.2d 111, 112 (Miss.1992), Patsy Bolden was driving down a street when her car struck Treshi-ka Dennis, a four-year-old girl. Bolden claimed she did not see Dennis. Id. At trial, Dennis’s grandmother testified that she was watching Dennis when the accident occurred, and Dennis was standing still when she was hit by Bolden’s car. This testimony was contradicted by a nurse on duty at the hospital who testified that Dennis’s grandmother had said that Dennis ran in front of the car. Id. Dennis and her mother brought a negligence action against Bolden. Id. At trial, the jury returned a verdict for Bolden. Dennis and her mother appealed. Id.
¶ 56- The supreme court reversed the jury verdict. Id. at 113. The court concluded that the jury was not properly instructed [4] because there was “no substantial, credible evidence supporting the theory that Dennis suddenly ‘ran’ or ‘darted’ in front of a car, the instruction should not have been given.” Id. The *811 court concluded that the instruction was based on the statement Dennis’s grandmother made to the nurse. The court reversed the case based on the erroneous instruction.
¶ 57. Despite the fact that the court reversed the case based on the erroneous instruction, the court also addressed whether Dennis and her mother were entitled to a peremptory instruction. The court determined that a peremptory instruction was not proper. In fact, the court affirmed that Bolden’s negligence was an issue in dispute to be decided by the jury. The court ruled:
This case presents a very close question on whether or not [Bolden] was negligent as a matter of law in never seeing [Dennis] until after the accident, and the jury should have been so instructed. The driver of a car is charged with the duty of keeping a proper lookout and being on alert for vehicles, objects[,] and persons ahead in the highway. Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962); Belle v. Rosamond, 213 Miss. 633, 57 So.2d 461 (1952). The driver is charged with the absolute duty of seeing what he should have seen. Tippit v. Hunter, 205 So.2d 267 (Miss.1967); Campbell v. Schmidt, 195 So.2d 87 (Miss.1967); Layton v. Cook, 248 Miss. 690, 160 So.2d 685 (1964). He is also required to have his car under proper control, to be on the alert on the highway, and avoid striking plain objects. Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss.1984); Shideler v. Taylor, 292 So.2d 155 (Miss.1974).
This accident occurred on a clear day, and on a straight street. In view of the evidence that the front of the car did not strike the child, however, and that she was struck by the side of the vehicle, the circumstances of this accident are not quite certain enough to warrant a directed verdict on liability, at least on the record before us.
Because the jury was erroneously instructed, and the case is being reversed on this ground, we do not address the question of whether the verdict of the jury is against the overwhelming weight of the evidence.
Bolden, 606 So.2d at 113-14.
¶ 58. There is no doubt that the supreme court, in Utz, rejected any argument that a driver has an “ ‘absolute’ duty to see what he should have seen.” Utz, 32 So.3d at 481 (¶ 102). The Utz court noted that the cases cited in Bolden regarding an “absolute” duty (Tippit v. Hunter, 205 So.2d 267 (Miss.1967); Campbell v. Schmidt, 195 So.2d 87 (Miss.1967); Layton v. Cook, 248 Miss. 690, 160 So.2d 685 (1964)) simply did not stand for the proposition for which they were cited. Utz, 32 So.3d at 481 (¶ 102). Instead, if the principle in Utz is applied here, Cleveland did not have an “absolute duty ... to avoid the collision. The instruction provided that the jury should find [Cleveland] negligent only if [Marie] would have been visible to a reasonably prudent driver in [Cleveland]’s position[,] and the accident could have been avoided through the exercise of reasonable care.” Id.
¶ 59. The cases cited in Utz and Bolden are consistent with this analysis. In Varner, 244 Miss. at 133, 141 So.2d at 227, the supreme court considered a negligence case where a butane-gas delivery truck backed over a young child playing in her yard. While the child was on the way to the hospital, the driver of the truck stated “it was my fault. I didn’t look.” Id. at 140, 141 So.2d at 228. At trial, the driver testified that before he started to back up the truck, the homeowner walked to the back of his truck, looked, and said, “It’s all right. Come on back.” Id. at 141, 141 *812 So.2d at 228. The driver also testified that he looked behind the truck. Id. The jury considered the claim that the driver “negligently and carelessly failed to look and observe to see that there was no child behind the truck, and backed his truck without keeping a proper lookout, and across the body” of the child. Id. at 141, 141 So.2d at 229. In considering the duty owed by the driver, the supreme court held:
A driver of an automobile must exercise ordinary care in backing, and to back without taking necessary precaution is negligence.... “One precaution that must be taken before starting to back is that of looking to see that the way is clear. The driver must .continue to look while he is in the act of backing.”
“One is not negligent per se in backing an automobile, when he cannot see over the back of the car so as to know what might be in his way, if he takes reasonable precautions, before starting to back, to make proper observations by looking to the right and to the left of the car and by standing up and looking over the back.”
This Court has pointed out in highway accident cases that it is the duty of an automobile driver to keep his- automobile under control and to keep a lookout in the direction in which he is proceeding, and must at all times be vigilant and anticipate and expect the presence of others and cannot assume that the way is clear.
In the case of Ulmer v. Pistole, 115 Miss. 485, 76 So. 522 [(1917)], this Court used the following language with reference to the duties of an automobile driver to keep his vehicle under control and keep a proper lookout: “The same general law applicable to the use of all vehicles on public highways applies to automobiles, the substance of which is that a driver must use that degree of . care and caution which an ordinarily prudent person would exercise under the same circumstances. But this is not all. Recognizing in the motor vehicle an instrumentality equally as dangerous in many respects as the locomotive and trolley car, the law exacts additional precautions from operators. The driver of an automobile must keep his machine constantly under control; he must continue on the alert for pedestrians and others using the streets, and must anticipate their presence. To assume that the way is clear is not his right. The fact that he was unaware of the presence of others in no way extenuates conduct which would have been wantonly reckless, had he known that another person or vehicle was crossing his pathway. ... It has even been held that the failure to see a pedestrian in the street amounted to negligence.”
Varner, 244 Miss. at 144-45, 141 So.2d at 230 (internal citations omitted).
¶ 60. Having read the jury instructions whole and not in isolation, we are of the opinion that the jury instructions given in this case fairly announce the law of the case and create no injustice. The circuit court’s instructions would have adequately supported a jury verdict in favor of the Paynes. Hence, we cannot find that the circuit court abused its discretion when it denied instruction P-14. The Paynes’ contention that they were entitled to have the jury instructed on Cleveland’s duty to see .what he could have seen was fairly covered in other instructions. The following instruction adequately set forth the Payne’s theory of the case:
You are instructed that a motorist has a duty to keep a reasonable and proper lookout to the front, back and sides for other vehicles and pedestrians and anticipate the presence of other vehicles *813 and pedestrians using a parking lot under the circumstances. Failure to do so is negligence.
Therefore, if you find from a preponderance of the evidence in this case that the Defendant Cleveland Gowdy was driving his vehicle and failed to keep a reasonable and proper lookout to the front, back[,] and sides for other vehicles and pedestrians under the circumstances to avoid injury to Marie Payne, then he was negligent.
¶61. Further, we find'that the circuit court was within its discretion to conclude that the language covered in P-14 was fairly covered by other instructions. We find no merit to this issue.
5. Whether the circuit court erred when it overruled the Paynes’ motion for JNOV or, in the alternative, for a new trial because the verdict was against the overwhelming weight of the evidence.
¶ 62. Finally, the Paynes argue that the circuit court erred when it denied their motion for a directed verdict, a peremptory instruction and a motion for JNOV or new trial. The Paynes’ principal argument is that the jury’s verdict was not based on the credible evidence and was the product of bias or prejudice.
¶ 63. The standard of review was stated in InTown Lessee Associates, LLC v. Howard, 67 So.3d 711, 718 (¶ 22) (Miss.2011), where the supreme court held:
“The standard of review for the denial of a motion for a judgment notwithstanding the verdict (JNOV) is de novo.” United Services Auto. Ass’n (USAA) v. Lisanby, 47 So.3d 1172, 1176 (Miss.2010) (citing U.S. Fid. and Guar. Co. of Miss. v. Martin, 998 So.2d 956, 964 (Miss.2008)). “A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict.” Adcock v. Miss. Transp. Comm’n, 981 So.2d 942, 948 (Miss.2008) (citing Johnson v. St. Dominics-Jackson Mem’l Hosp., 967 So.2d 20, 22 (Miss.2007)). “This Court will consider the evidence in the light most favorable to the appellee, giving the party the benefit of all favorable infer-enee[s] that may be reasonably drawn from the evidence.” Spotlite Skating Rink, Inc. v. Barnes ex rel. Barnes, 988 So.2d 364, 368 (Miss.2008) (quoting Ala. Great S. R.R. Co. v. Lee, 826 So.2d 1232, 1235 (Miss.2002)). “In essence, judgments as a matter of law present both the trial court and the appellate court with the same question-whether the evidence, as applied to the elements of a party’s case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated.” USAA, 47 So.3d at 1176 (quoting White v. Stewman, 932 So.2d 27, 32 (Miss.2006)). “This Court applies the same standard of review as it applies when reviewing the denial of directed verdict or JNOV.” Solanki v. Ervin, 21 So.3d 552, 557 (Miss.2009).
¶ 64. The Paynes argue that Marie walked down the parking lane on the left (or driver’s side) of Cleveland’s truck before being struck. Mitchell testified that there was no other route from the elevators at the far end of the parking garage to Marie’s car. This placed Marie in full view of Cleveland and Diane for seyeral seconds. The Paynes argue that the jury ignored the fact that Marie had to be visible at some point before she wound up under the truck. Cleveland’s own expert, Dr. Joey Parker, admitted that Marie had to walk through Cleveland’s field of view and passed by the left (or driver’s) side before the incident. Only Cleveland *814 testified that he did not see Marie while he was driving forward.
¶ 65. The Paynes argue that the real issue is whether or not Cleveland should have seen Marie. Thus, they contend that should Cleveland be allowed to escape liability in this situation, other defendants will try to avoid responsibility in the future by simply claiming that they did not see the person before they ran over them.
¶ 66. After we consider the evidence in the light most favorable to Cleveland, giving Cleveland the benefit of all favorable inferences that may be reasonably drawn from the evidence, this Court finds that there was substantial evidence to support the jury’s verdict.
¶ 67. Marie, seventy-eight years old at the time of the accident, walked through the parking garage behind cars that were parked on the left of the picture included earlier. As Cleveland’s truck passed her, she turned to her left to continue to her car. Unfortunately, just after she turned, Cleveland stopped his truck, shifted the truck in reverse and backed up. The result was that his truck ran over Marie and caused tragic injuries that resulted in her subsequent death.
¶ 68. The question presented in this case is not whether Cleveland caused Marie’s death. He did. Instead, the question before the jury was whether Cleveland was negligent in operating his vehicle that caused Marie’s injuries and death.
¶ 69. Cleveland testified that, before putting his truck into reverse, he came to a full and complete stop. He turned his head and looked to the left, turned his head and looked to the right, and then turned his head back to the left and looked again. He looked behind him before he backed up, and he did not see Marie. Considering this evidence, the inferences in favor of Cleveland, and the jury’s verdict, the Court finds that there was sufficient evidence to support the jury’s verdict and the Paynes were not entitled to a judgment as a matter of law.
¶ 70. For these reasons, the jury verdict is affirmed.
¶ 71. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., BARNES, ISHEE, CARLTON, MAXWELL and FAIR, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RUSSELL, J. ROBERTS, J., NOT PARTICIPATING.

. During voir dire, all of the prospective jurors, with only one exception, stated that they were familiar with the Anderson Hospital parking garage.

. For the remainder of this opinion, we refer to the defendants/appellees collectively as "Cleveland” unless the context requires otherwise.

. The medical records revealed that Marie . had fallen three times during her life. On July 17, 2007, Marie was gardening and fell into her rose bushes. Her medical records dated February 7, 2008, indicated that she fell about two weeks earlier. Her medical records dated May 20, 2008, indicated that she had fallen since her last office visit. The records contained no other factual details of the prior falls.

. The jury instruction read:
The Court instructs the jury that when a motorist is driving at a reasonable rate of speed, is obeying the rules of the road, and operating her automobile with due care[,] she is not liable for any injuries to a child who darts out from behind a parked car so suddenly that the driver cannot stop or otherwise avoid injuring the child. If you believe that[,] on the day of the accident[,] Patsy Bolden was driving at a reasonable rate of speed and obeying the rules of the road, and if you believe that Treshika Dennis ran out from the front of Jack Wilson’s parked car so suddenly that Patsy Bolden could not stop or otherwise avoid collision with the child, then the Court instructs you that Patsy Bolden is not liable for any injuries received by Treshika Dennis, and you should return a verdict for the Defendant, Patsy Bolden.