## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01613-COA

TERRY E. HARRIS                                                                    APPELLANT

v.

EDDIE MICHAEL, JR. AND BELLSOUTH                               APPELLEES
TELECOMMUNICATIONS, LLC D/B/A AT&T
MISSISSIPPI

DATE OF JUDGMENT:             10/15/2014
TRIAL JUDGE:                  HON. ANTHONY ALAN MOZINGO
COURT FROM WHICH APPEALED:    LAMAR COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      CHASE FORD MORGAN
                              LEONARD BROWN MELVIN III
ATTORNEYS FOR APPELLEES:      ROBERT D. GHOLSON
                              KATHERINE BISNETTE SUMRALL
NATURE OF THE CASE:           CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:      GRANTED APPELLEES' MOTION FOR
                              DIRECTED VERDICT AND PARTIALLY
                              GRANTED APPELLEES' MOTION IN
                              LIMINE
DISPOSITION:                  AFFIRMED IN PART AND REVERSED
                              AND REMANDED IN PART: 06/07/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

  EN BANC.

  FAIR, J., FOR THE COURT:

¶1.    In this negligence case, Terry Harris sued Eddie Michael Jr. and BellSouth

Telecommunications, claiming that he suffered injuries from Michael's failure to stop and

yield to his vehicle at an intersection.  At the close of Harris's case, the defendants moved

for a directed verdict.  We find the court erred in granting the defendants' motion.  Thus, we

reverse and remand.

**FACTS**

¶2.     On June 10, 2010, Harris was riding with Robert Madden picking up limbs as part of their job for the Lamar County Road Department. Madden was driving eastbound on Shears Road in Hattiesburg, Mississippi. Michael was driving southbound on Weathersby Road in a BellSouth company truck, with a trailer attached. Both trucks approached the four-way stop at the intersection of Shears Road and Weathersby Road. As Madden made his right turn at the intersection, his truck struck the end of Michael's trailer. Harris claimed that he suffered back injuries from the accident and that Michael's negligence was the sole and proximate cause of his injuries.

¶3.     Michael stated in his deposition that he took photos of the damaged vehicles after the accident and submitted the photos to BellSouth. He also completed a "safety procedure report" from a "redbook" – as required under BellSouth's company policy. Harris requested the photos and report during discovery, but the defendants stated that the information had been lost by a third party courier. The day before trial, Harris requested a spoliation instruction on the basis of the missing information. The defendants filed a supplemental motion in limine, requesting the court prohibit the plaintiff from mentioning, implying, or eliciting testimony about the photos taken from the accident, the "red book," and the "safety procedure report." The court partially granted the defendants' motion, stating that Harris could ask Michael about his personal knowledge of the photos and report, but could not imply that the information had been lost or destroyed by the employer or a third party.

2

¶4.     At trial, Harris and Madden both testified that Madden made a complete stop at the intersection, then proceeded to turn right.  They also said there were no other vehicles in sight when Madden turned at the intersection.  Michael testified Madden ran the stop sign and caused the accident.

¶5.     The defendants moved for a directed verdict at the close of Harris's case.  The court granted the motion, stating the evidence showed "nothing more than speculation," since neither Harris nor Madden testified that Michael caused the accident.  Harris appealed.

**DISCUSSION**

**1.  Directed Verdict**

¶6.     "Mississippi Rule of Civil Procedure 50(a), which governs directed verdicts, applies to jury trials, where the judge is not the fact-finder." *All Types Truck Sales Inc. v. Carter & Mullings Inc.*, 178 So. 3d 755, 758 (¶12) (Miss. Ct. App. 2012).  The standard of review for a trial court's grant or denial of a motion for a directed verdict is de novo.  *Solanki v. Ervin*, 21 So. 3d 552, 556 (¶8) (Miss. 2009) (citations omitted).  The trial court may direct a verdict for the defendant at the close of the plaintiff's case under Mississippi Rule of Civil Procedure 50(a) if it finds the plaintiff has failed to present credible evidence to establish the necessary elements of his claim.  *Hall v. Miss. Chem. Express Inc.*, 528 So. 2d 796, 798 (Miss. 1988).  Our supreme court has stated:

> [T]he trial judge is to look solely to the testimony on behalf of the party against whom a directed verdict is requested.  He will take such testimony as true along with all reasonable inferences which can be drawn from that testimony which is favorable to that party, and, if it could support a verdict for that party,

3

> the directed verdict should not be given. If reasonable minds might differ as to this question, it becomes a jury issue.

*Solanki*, 21 So. 3d at 556 (¶8) (quoting *White v. Thomason*, 310 So. 2d 914, 916-17 (Miss. 1975)).

¶7. Clearly, only one vehicle had the right-of-way at the intersection. The accident raises fact issues of how the accident occurred and legal issues of simple negligence. "The elements of negligence are well-established: duty or standard of care, breach of that duty or standard, proximate causation, and damages or injury." *Porter v. Grand Casino of Miss. Inc.*, 181 So. 3d 980, 985 (¶12) (Miss. 2016).

¶8. Viewing the evidence in the light most favorable to Harris, reasonable minds could differ as to whether Michael was negligent. Harris and Madden testified that Madden made a complete stop at the intersection, and that, when Madden entered the intersection, there were no other vehicles in sight. Taking the plaintiff's testimony as true, the reasonable inference would be that Michael ran the stop sign.[1]

¶9. The dissent finds that, had Michael run the stop sign, the impact would have occurred in different places on the vehicles. That is a question for the fact-finder, not the judge. And although Harris did not say with certainty that Michael ran the stop sign, he did say that

---

[1] Harris also testified that he saw Michael holding a cell phone after the accident occurred. In his deposition, Michael stated that he had not used his phone right before the accident. Cell phone records in discovery, however, revealed that he actually was on his phone at the time of impact (possibly impairing his driving). During cross-examination, Michael said he had forgotten that he used his phone.

4

Madden made a complete stop. Harris's testimony contradicted Michael's testimony. "The general rule is, where there is a conflict in the evidence, the question of negligence is for the determination of the jury." *Payne v. Gowdy*, 155 So. 3d 794, 805 (¶44) (Miss. Ct. App. 2012) (citing *Butane Gas Co. v. Varner*, 244 Miss. 130, 141 So. 2d 226, 232 (1962)). Therefore, the court's grant of the defendants' motion was improper.

¶10. Because facts and inferences created a question of fact from which reasonable minds could differ, the court should not have granted a directed verdict but instead submitted the matter to the jury. Thus, we reverse the court's decision.

### 2. Motion in Limine

¶11. To grant a party's motion in limine, the court must find that: "(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Whittley v. City of Meridian*, 530 So. 2d 1341, 1344 (Miss. 1988) (citation omitted). We will not reverse a court's grant of a motion in limine unless we find the court abused its discretion. *Cridiso v. State*, 956 So. 2d 281, 289 (¶21) (Miss. Ct. App. 2006) (citation omitted).

¶12. Michael stated in his deposition that he filed a BellSouth "safety procedure report" from a "redbook." He filled out the report at the accident site. He also took pictures of the accident with a disposable camera, which was standard protocol for BellSouth employees. Michael gave the camera to his supervisor and never saw the pictures developed. During

5

discovery, Harris requested the defendants "[p]roduce all recorded statements [in their possession], whether video, audio, or other form[,] describing the accident in question." For information not in their possession, the defendants were asked to "identify the statement(s) and provide the name, address, and telephone number of its/their custodian."

¶13. The defendants responded, stating that after a diligent search, they determined that the documents were lost in transit by a third party courier around the time of the accident three years prior. They further stated that, in a good faith effort to respond to Harris's request, they provided in discovery the "flash report" prepared right after the accident. That report purportedly contained the same information as the "safety procedure report."

¶14. There was no other mention of the missing information until the day before the trial, when Harris filed his proposed jury instructions. The relevant instruction stated:

> [I]f you find by a preponderance of the evidence in this case that Eddie Michael[] Jr. . . . negligently failed to secure the photographs taken . . . at the scene of the accident, the "red book" completed by Eddie Michael Jr., after the accident, and the "safety procedure report" completed by Eddie Michael Jr., after the accident, causing them to be misplaced, lost or otherwise unavailable for the use at this trial, then you should presume that the photographs, the "red book" and the "safety procedure report" contained evidence that was unfavorable [to the defendants].

¶15. The defendants filed a supplemental motion in limine to exclude the instruction. The court granted the motion in part, ruling that Harris could not "create an inference to the jury that the employer, the third party, [or] who[]ever was involved in handling the red book and photograph did anything wrong through [Michael]." The court explained that the issue was too prejudicial to present to the fact-finder. Harris could, however, ask Michael about his

6

personal knowledge of the missing information.

¶16.    "[A] negative inference is only proper when a defendant intentionally or through gross negligence discards evidence that is the subject of litigation." *Page v. Biloxi Reg'l Med. Ctr.*, 91 So. 3d 642, 645 (¶17) (Miss. Ct. App. 2012) (citing *Thomas v. Isle of Capri Casino*, 781 So. 2d 125, 133 (¶39) (Miss. 2001)).  Here, the judge determined there was no evidence of an intentional act or gross negligence on the defendants' behalf.  And so under Mississippi Rule of Evidence 403,[2] any evidence suggesting that the defendants lost or misplaced the information –  because it was "unfavorable" to them – was more prejudicial than probative.

¶17.    "Broad discretion is vested in the trial court to guard against unfair innuendos which might arise as a result of trial strategy." *Whittley*, 530 So. 2d at 1345.  Because the record lacks any evidence supporting that the defendants intentionally or recklessly discarded the missing information, we find the court was within its discretion to partially grant the defendants' motion in limine.

## CONCLUSION

¶18.    We find no error in the court's partial grant of the defendants' motion in limine.  We do, however, find error in the court's grant of the defendants' motion for a directed verdict. Accordingly, we reverse and remand.

---

[2] Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶19. **THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEES.**

**LEE, C.J., IRVING, P.J., ISHEE AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**BARNES, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶20. Finding the circuit judge did not err in granting the defendants' motion for a directed verdict, I respectfully dissent from the majority's decision to reverse and remand on this issue. I concur with the majority that the court was within its discretion to grant the defendants' motion in limine in part.

¶21. "[I]f reasonable jurors could not have arrived at a different verdict, the grant of a directed verdict must be affirmed on appeal. On the other hand if there is substantial evidence, that is, *evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions*, we cannot affirm the grant of a directed verdict." *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 872-73 (¶3) (Miss. 2006) (emphasis added) (citing *Cousar v. State,* 855 So. 2d 993, 998 (¶14) (Miss. 2003)). Even affording Harris all favorable inferences from the evidence, I disagree with majority's finding that reasonable minds could differ as to what caused the accident in question. After the plaintiff rested his case, the defense moved for a directed verdict, noting that both Harris and Madden "admitted in sworn testimony that they did not see [Bellsouth's]

8

vehicle at any point prior to the accident; therefore, it is impossible for either of them to say that [Michael] did anything that could be construed as negligence." The testimony supports this argument. At trial, Madden could not state with any certainty what caused the accident.

Q.   Do you have any explanation for the accident?

A.   Not really.

Q.   You don't know whose fault it was or what happened?

A.   Should have been mine. I didn't see him . . . .

Q.   Do you have any answer as to whether he stopped at that stop sign?

A.   I have no idea.

Q.   Okay. But you never saw [Michael]?

A.   I never saw him.

Harris also acknowledged during cross-examination that he did not see the BellSouth vehicle before impact; he simply speculated that Michael had sped through the stop sign, stating "I don't think he stopped."[3] Michael also testified that Madden admitted fault after the accident, stating that "he just didn't see me." He also said Harris came over and said "old buddy [(Madden)] just didn't see me," but Harris denied talking to Michael after the incident.

¶22.   The court granted the defendants' motion, finding that the testimony by Harris and

---

[3] Photos admitted into evidence show that the intersection was clear of any impediments to a person's viewing of other vehicles at the intersection (i.e., bushes, trees, etc.). There was also testimony by Michael that the accident happened mid-morning on a sunny day.

Madden was "nothing more than speculation as to what caused this accident." Thus, the circuit court concluded that Harris failed to establish liability on the part of the defendants during his case-in-chief, noting in its final judgment that "the subjective belief of Plaintiff and/or Mr. Madden as to whether or not the BellSouth vehicle ran the stop sign is not sufficient to establish negligence or causation." A circuit court's granting of a motion for a directed verdict is proper "if the plaintiff's evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party." *Fulton v. Robinson Indus. Inc.*, 664 So. 2d 170, 172 (Miss. 1995) (citing *Tate v. S. Jitney Jungle,* 650 So. 2d 1347, 1349-50 (Miss. 1995)).

¶23.    Furthermore, as defense counsel additionally argued at trial, the location of the impact between the vehicles – between the left-front bumper of the Lamar County truck and the rear-right axle of the BellSouth trailer – shows that "it is inescapable that [Michael's] vehicle occupied and preempted the intersection before [the] plaintiff's truck began to pull through the stop sign[.]" Although the circuit judge did not base his decision to grant the directed verdict on this argument, I find the defense's claim is supported by undisputed evidence.[4] Logic dictates that had Michael run the stop sign on the north side of the intersection traveling southbound, after the other truck had already begun turning right into the intersection from the west, the impact of the collision would not have been toward the rear

_____

[4] The circuit court did observe in its final judgment that Michael's testimony "is consistent with the physical facts of the accident." Michael testified that he "came to a complete stop," and he saw the other truck "approaching the intersection."

of the trailer attached to the back of the BellSouth truck, but rather the impact would have been toward the front of the BellSouth truck itself.

¶24. Finding the evidence insufficient to establish any liability on the part of the defendants, I would affirm the circuit court's judgment.

**GRIFFIS, P.J., CARLTON AND WILSON, JJ., JOIN THIS OPINION.**