# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00367-COA

LINDA CARLSON                                                                 APPELLANT

v.

LARRY BRABHAM                                                                 APPELLEE

DATE OF JUDGMENT:                   11/07/2013
TRIAL JUDGE:                        HON. RAY HILLMAN MONTGOMERY
COURT FROM WHICH APPEALED:          AMITE COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:            JAMES D. SHANNON
                                    KATHRYN LINDSEY WHITE
ATTORNEY FOR APPELLEE:              EDWIN L. BEAN JR.
NATURE OF THE CASE:                 CIVIL - CONTRACT
TRIAL COURT DISPOSITION:            GRANTED DIRECTED VERDICT IN
                                    FAVOR OF APPELLEE
DISPOSITION:                        AFFIRMED: 01/19/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Linda Carlson sued Larry Brabham for equitable division of partnership assets amounting to $167,762.06.  The Amite County Chancery Court granted Brabham's motion for a directed verdict.  Carlson appeals and asserts the chancellor improperly granted Brabham's motion.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Brabham and Carlson began living together in 2004.  At the time, Brabham worked in the logging industry, and Carlson worked full-time for Telepak Networks.  Carlson and

Brabham were both married when they became romantically involved. Brabham divorced his wife shortly after the start of his relationship with Carlson. Carlson, however, remained married to her husband for the duration of her relationship with Brabham.

¶3. Before their relationship, Brabham owned and operated Brabham Logging. When Brabham started seeing Carlson, she encouraged him to incorporate the business and change the name to Longhorn Logging. Carlson set up a meeting with an attorney for the purpose of incorporating the business. The incorporation papers listed Brabham as the president of the business, and Carlson as the secretary, treasurer, and agent for service of process.

¶4. After Longhorn Logging had operated for several years, the Mississippi Secretary of State administratively dissolved it for failing to file articles of incorporation and issue stock. The Longhorn Logging profit and loss detail statement showed that Longhorn Logging ceased operations as a viable business after September 2007. However, Longhorn Logging maintained an active bank account until March 16, 2009.

¶5. In addition to Longhorn Logging, Brabham owned a parcel of land on Amazing Grace Lane in Amite County. Brabham received the parcel as part of the divorce settlement with his ex-wife. Brabham intended to build a house on the property and began construction a year after starting his relationship with Carlson. The construction funds came out of the Longhorn Logging checking account, which Brabham used as both his business and personal bank account. Brabham completed the majority of the work himself, while Carlson did minor labor and selected the light fixtures and some of the furniture. When the house was completed, Carlson knew the house and land were in Brabham's name.

¶6. After two years at Amazing Grace Lane, Brabham's ex-wife offered to sell him their former home located on East Fork Road. Brabham sold the house on Amazing Grace Lane for $385,916. He used the proceeds to pay off the remaining land note of $97,479.22 on Amazing Grace Lane and purchase the house on East Fork Road for $250,000. Just as with the Amazing Grace Lane house, Brabham did not put Carlson's name on the deed to the house on East Fork Road. Though Carlson confronted Brabham about leaving her name off of the deed, Brabham did not change the deed, but instead purchased a life-insurance policy worth $250,000, which named Carlson as the beneficiary.

¶7. When Carlson and Brabham ended their relationship, Carlson removed her personal property from the East Fork Road home. However, Carlson also wanted a share of Longhorn Logging and the East Fork Road property. Carlson filed her original complaint for an equitable distribution of the properties on May 12, 2011. Both parties filed motions for summary judgement, which the chancellor denied, and the case proceeded to trial on March 7, 2013.

¶8. Brabham filed a motion for a directed verdict after Carlson presented her case-in-chief. The chancellor requested both parties submit proposed findings of fact and conclusions of law. After reviewing both parties' submissions, the chancellor adopted Brabham's findings of fact and conclusions of law in toto and entered a judgment in favor of Brabham.

¶9. After the chancellor denied Carlson's motion to alter or amend the judgement or, in the alternative, for a new trial, Carlson appealed. Carlson primarily contends the chancellor

3

erred in granting Brabham's motion for a directed verdict. Carlson's issues on appeal, edited for clarity, are whether: (1) Carlson filed her complaint within the three-year statute of limitations; (2) Brabham and Carlson formed a partnership; (3) Brabham and Carlson formed a joint venture; (4) Brabham was unjustly enriched and the chancellor erred by declining to create a constructive trust for the East Fork Road house; and (5) Carlson was entitled to "sweat equity."

STANDARD OF REVIEW

¶10.    "In a non-jury trial, such as this case, the appropriate motion is not a motion for [a] directed verdict pursuant to Mississippi Rule of Civil Procedure 50; instead, the correct motion is a motion for [an] involuntary dismissal pursuant to Mississippi Rule of Civil Procedure 41(b)." *Partlow v. McDonald*, 877 So. 2d 414, 416 (¶7) (Miss. Ct. App. 2003) (citation omitted) (citing *Buelow v. Glidewell*, 757 So. 2d 216, 220 (¶12) (Miss. 2000)). In this case, Brabham filed a Rule 50 motion for a directed verdict, rather than a Rule 41(b) involuntary-dismissal motion.

¶11.    The Mississippi Supreme Court has held that in situations such as this, an appellate court must:

> [C]onsider th[e] appeal based on the correct standard of review, which under Rule 41(b) is different than the standard of review applicable to a motion for a directed verdict under Rule 50. In considering a motion for [an] involuntary dismissal under Rule 41(b), the trial court should consider the evidence fairly, as distinguished from in the light most favorable to the plaintiff, and the [trial court] should dismiss the case if it would find for the defendant. On appeal, [an appellate court] must apply the substantial evidence/manifest error standard to an appeal of a grant or denial of a motion to dismiss pursuant to [Rule 41(b)].

4

*Id.* at 416-17 (¶7) (internal quotations and citations omitted) (citing *Miss. Real Estate Comm'n v. Geico Fin. Servs. Inc.*, 602 So. 2d 1155, 1156 n.1 (Miss. 1992)).

¶12.   Further, the supreme court has held that appellate courts must "apply the familiar abuse-of-discretion standard to a trial judge's factual findings, even where the judge adopts verbatim a party's proposed findings of fact." *Bluewater Logistics LLC v. Williford*, 55 So. 3d 148, 157 (¶32) (Miss. 2011).

## ANALYSIS

    I.    *Whether Carlson filed her complaint outside the three-year statute of limitations.*

¶13.   This Court begins with the question of whether Carlson timely filed her complaint within the applicable statute-of-limitations period.  Statute-of-limitations issues are subject to a de novo review.  *Koestler v. Miss. Baptist Health Sys. Inc.*, 45 So. 3d 280, 282 (¶7) (Miss. 2010).  The general three-year statute of limitations under Mississippi Code Annotated section 15-1-49 (Supp. 2015) applies to Carlson's claims.  Brabham argues that Carlson's cause of action for equitable division of the house at East Fork Road accrued when she discovered or reasonably should have discovered her name was not on the deed to the house. Brabham closed on the house at East Fork Road on March 21, 2007.  At trial, Carlson admitted that she discovered that her name was not on the deed within a few days of the closing.  But Carlson did not file her complaint until more than four years later on May 12, 2011, which would place the claim outside the three-year statute of limitations.

¶14.   Carlson, however, alleges that the claim did not accrue until at least March 16, 2009, when the Longhorn Logging bank account closed.  Carlson claims that  Longhorn Logging

5

funds, in which she also claims a partnership interest, were used to purchase the house at East Fork Road. Alternatively, Carlson contends that the statute of limitations has not begun to run because Brabham still owns the house as partnership property. Under either theory, Carlson's claims would fall within the time limitation.

¶15. The chancellor found that Carlson failed to prove all of the necessary elements of a partnership. The chancellor's judgment stated that the statute of limitations began on March 21, 2007, the closing date of the East Fork Road property. We agree. Therefore, this Court finds Carlson's claims are barred by the statute of limitations. Regardless, this Court will address the merits of each remaining issue.

   II.     *Whether Brabham and Carlson formed a partnership.*

¶16. Carlson claims she has a partnership interest in Longhorn Logging. Carlson further claims that she is entitled to an equitable division of Brabham's property at East Fork Road because she contributed to the house, and Brabham purchased it using funds from the Longhorn Logging checking account.

¶17. Mississippi Code Annotated section 79-13-202(a) (Rev. 2013) defines a partnership as "the association of two or more persons to carry on as co-owners [of] a business for profit[.]" "The three main questions that are considered in partnership determination are (1) the intent of the parties, (2) the control question, and (3) profit sharing." *Smith v. Redd*, 593 So. 2d 989, 994 (Miss. 1991). The intent required to form a partnership may be implied. *Id.* However, profit sharing may be the most important factor. *Century 21 Deep S. Props. Ltd. v. Keys*, 652 So. 2d 707, 715 (Miss. 1995). "A person who receives a share of the profits of

6

a business is presumed to be a partner in the business, unless the profits were received in payment . . . of wages or other compensation to an employee." Miss. Code Ann. § 79-13-202(c)(3)(iii).

### A.    Intent

¶18.    We first look to intent to determine if the parties formed a partnership in Longhorn Logging.  Brabham and Carlson agree that Carlson arranged to incorporate the business under Longhorn Logging, but Brabham contends this only changed the name of the business. Brabham disputes that he and Carlson intended to form a partnership with Longhorn Logging.  "[W]hen parties dispute intent, it may only be proved by objective manifestations such as writings, conduct, or other such circumstances." *Crowe v. Smith*, 603 So. 2d 301, 305 (Miss. 1992).  However, Brabham and Carlson did not enter into any written agreement to form a partnership.  Therefore, when there is no written partnership agreement, the chancellor must look at the circumstances surrounding the relationship to determine intent. *Summers v. A-1 Cash Inc.*, 911 So. 2d 975, 979 (¶12) (Miss. Ct. App. 2005).  ¶i)   Carlson submitted evidence of her own testimony and that of close friends and relatives stating that Brabham said he and Carlson were partners in the logging company and "in it together." Brabham testified in his deposition that Longhorn Logging operated the same way as Brabham Logging, which existed prior to the relationship.  Brabham, however, stated he gave Carlson check-writing authority and bookkeeping responsibilities.  Nonetheless, Carlson completed multiple state forms naming Brabham as the sole owner of Longhorn Logging. As such, the chancellor agreed with Brabham's findings that Carlson did not prove that the

parties intended to enter into a partnership agreement for Longhorn Logging.

¶19. Carlson also claims a partnership interest in the house at East Fork Road because Brabham purchased it with funds from the sale of the house at Amazing Grace Lane. But Brabham received the land at Amazing Grace Lane from his divorce settlement. Carlson failed to prove the amount of the sale price that came from the house or from the land. Carlson could only show that the proceeds from the Amazing Grace Lane house were placed into the Longhorn Logging account, and the proceeds were then used to purchase the East Fork Road house. However, because Carlson failed to prove the intent factor for a partnership in Longhorn Logging, she cannot claim the parties entered a partnership with the East Fork Road house based on its association with Longhorn Logging.

¶20. Carlson also claims she contributed $32,287.62 in personal funds to the Amazing Grace Lane house, but she fails to show why she should be entitled to a reimbursement. Carlson stated that she paid for some construction materials, supplied some fixtures, and bought some furniture for the house. However, there was testimony that Carlson repossessed her personal items, including the furniture. Carlson further failed to show that Brabham intended to form a partnership with Carlson for the house. Brabham owned the land and paid the note owed on the land, though Carlson argues she also paid some on the note. Additionally, only Brabham's name appeared on the deeds to the house and land. Similar to her Longhorn Logging argument, Carlson failed to demonstrate that she and Brabham intended to form a partnership regarding the house.

¶21. After weighing the testimony against the facts of the case, the chancellor found the

parties lacked any intent to form a business partnership. Therefore, this Court finds Carlson failed to prove the intent requirement.

### B. Control

¶22. Intent, however, is only one of the factors required to form a partnership. The second factor is control, and "[p]articipation in the control of the business is indicative of whether a partnership exists." *Smith*, 593 So. 2d at 994. But "[w]hile control is indicative of the existence of a partnership, control by itself is not the exclusive indicator of partnership. Partner-like control may or may not be found depending on the surrounding circumstances, because the circumstances will vary from relationship to relationship." *Summers*, 911 So. 2d at 980 (¶15) (internal quotations and citation omitted).

¶23. The day-to-day operation of the business involved Brabham working with the logging crew and operating Longhorn Logging. Brabham negotiated and signed the timber contracts, managed the timber crew, hired and fired employees, and negotiated for the purchase of new logging equipment. Carlson worked at Telepak full-time, but also did the bookkeeping for the logging business. Outside of the bookkeeping and finances, Carlson did not control any aspect of the business. Occasionally, Brabham would leave instructions with her to give to the timber crews or have her pick up a part for a piece of equipment. Carlson asserts that she hired Jeannette Sullivan, a friend of hers, to perform filing for the business along with general housekeeping duties, which demonstrated her control of the company.

¶24. Nonetheless, the chancellor found this evidence unpersuasive and ruled against Carlson on this factor. We agree. Carlson failed to prove she controlled the day-to-day

operations or the direction of the business. Brabham was responsible for the business transactions, the operations, and the profits. Therefore, the control factor weighs against Carlson.

### C. Profit Sharing

¶25. Of the three factors, profit sharing is the most important one in determining whether a partnership exists. *Summers*, 911 So. 2d at 979 (¶11). The chancellor found that Carlson met the profit-sharing factor because Brabham used his income from Longhorn Logging for the couple's expenses. The *Smith* court ruled that occasionally splitting profits did not meet the requirements of partnership profit sharing. *Smith*, 593 So. 2d at 995. Mississippi Code Annotated section 79-13-202(c)(3)(ii) imposes a presumption of partnership when profit sharing is proven, unless the share of the profits is received through wages. According to Longhorn Logging's 2007 profit and loss detail, Carlson received checks for bookkeeping services. Only Brabham received dividends, even though Longhorn Logging did not properly issue dividends. However, while not conclusive, this distinction strongly implies that Longhorn Logging did not consider Carlson a partner in the business.

¶26. The chancellor found that Carlson could prove only profit sharing. Although we find that the facts do not support this finding, this Court will not reverse the chancellor's decision as to this factor. The chancellor's overall determination that Brabham and Carlson were not partners was correct. Therefore, the chancellor did not abuse his discretion in finding no partnership existed between the parties. This issue is without merit.

### III. Whether Brabham and Carlson formed a joint venture.

10

¶27. Carlson also asserts that the houses and business were a joint venture between the parties. Carlson further claims that she is entitled to an equitable distribution of the property that she and Brabham jointly accumulated as part of a joint venture. The chancellor dismissed Carlson's joint-venture claim due to the running of the statute of limitations. We agree. Additionally, we find the evidence did not support Carlson's joint-venture claim.

¶28. A partnership and a joint venture are identical "except the latter has limited and circumscribed boundaries." *Hults v. Tillman*, 480 So. 2d 1134, 1141 (Miss. 1985). "A joint venture is a form of contract, and [is] governed by contract law." *Id.* at 1143. The first question to determining the existence of a joint venture is whether the parties intended to form a joint venture. *Id.* The supreme court has stated:

> We [have] broadly defined a joint venture as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, efforts, skill[,] and knowledge. We said it exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and . . . have a voice in its management. We noted a condition precedent for its existence was a joint proprietary interest in the enterprise and right of mutual control.

*Pittman v. Weber Energy Corp.*, 790 So. 2d 823, 826 (¶10) (Miss. 2001) (quoting *Hults*, 480 So.

2d at 1143).

¶29. Further, mutual obligations and division of the proceeds alone do not constitute a joint venture. *Hults*, 480 So. 2d at 1144. "[T]he existence of a joint venture may be inferred from the facts, circumstances, and conduct of the parties." *Pennebaker v. Gray*, 924 So. 2d 611, 618 (¶24) (Miss. Ct. App. 2006) (citation omitted). "The absence of any discussion or

11

agreement about paying the expenses of the venture may support the conclusion that no joint venture exists." *Id.* at (¶22) (quoting *Hults*, 480 So. 2d at 1147).

¶30.    The parties did not have an agreement recognizing the existence of a joint venture, written or otherwise. There was no indication that Carlson and Brabham built the Amazing Grace Lane house or purchased the East Fork Road house solely for the purpose of making a profit. Carlson claimed she contributed $32,287.62 in personal funds to the Amazing Grace Lane house, but she did not prove that the parties intended to sell the house to make a profit. Brabham only sold the Amazing Grace Lane house when his ex-wife offered to sell their former home on East Fork Road.

¶31.    Further, Brabham did not sell the East Fork Road house, but continued to live in it. This contradicts Carlson's assertion that the two acquired the East Fork Road house as a joint venture. "[A]ctual intent to form a joint venture is essential." *Hults*, 480 So. 2d at 1143. Because the evidence was insufficient to show actual intent, Carlson failed to prove the parties formed a joint venture for either the Amazing Grace Lane or the East Fork Road houses.

¶32.    Nonetheless, Carlson claims that the business was part of a joint effort. Carlson testified she loaned money to Brabham for logging equipment to show their intent to form a joint venture. Carlson testified she paid $4,000 for a trailer, $4,000 for a dozer, and $7,000 for equipment. Carlson also argued she spent $13,000 on other equipment.

¶33.    However, other evidence showed that Carlson received either a full or partial reimbursement for the equipment expenses. "If money, loaned to another for use in the

enterprise, is to be repaid by the borrower, whether the venture succeeds or fails, the contract is ordinarily construed as one of lending and borrowing and not of [a] joint adventure." *Boxwell v. Champagne*, 229 Miss. 355, 366, 91 So. 2d 256, 261 (1956). Though "the relationship of parties in a transaction may be that of joint adventurers rather than that of debtor and creditor," this occurs when the parties possess the intent to form a joint-venture agreement, unlike in this case. *Id.* Therefore, we determine that the evidence defeats a claim of a joint venture. Further, we agree with the chancellor that the statute of limitations precludes this claim. This issue is meritless.

> IV. *Whether Brabham was unjustly enriched and the chancellor erred by declining to create a constructive trust for the East Fork Road house.*

¶34. Carlson asserts that Brabham was unjustly enriched by the sale of the Amazing Grace Lane house. Because of this unjust enrichment, Carlson requested that the chancellor place the East Fork Road house, which Brabham purchased with the proceeds from the Amazing Grace Lane house, into a constructive trust. The chancellor denied this request, ruling that Carlson failed to meet her burden of proof to support a constructive trust. We agree with the chancellor and affirm this decision.

¶35. Unjust enrichment applies when there is no legal contract and the defendant is in possession of property, "which in good conscience and justice he should not retain but should deliver to another." *Miss. Dep't of Envtl. Quality v. Pac. Chlorine Inc.*, 100 So. 3d 432, 442 (¶36) (Miss. 2012). Unjust enrichment is defined as "[m]oney paid to another by mistake of fact[.]" *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1180 (¶14) (Miss. 2004) (citing *Mason v. S. Mortg. Co.*, 828 So. 2d 735, 739 (¶18) (Miss. 2002)).

¶36. Further, clear and convincing proof is required to establish a constructive trust. *Planters Bank & Tr. Co. v. Sklar*, 555 So. 2d 1024, 1034 (Miss. 1990). "The evidence must consist of something more than loose conversations with third parties." *Stovall v. Stovall*, 218 Miss. 364, 376, 67 So. 2d 391, 396-97 (1953). "The elements of a constructive trust are: (1) a confidential or fiduciary relationship which must normally be shown; (2) a promise by defendant; and (3) transfer by plaintiff to defendant in reliance on defendant's promise (4) under circumstances that constitute unjust enrichment." James W. Shelson, *Mississippi Chancery Practice* § 41:11 (2015). The relationship may be a social or domestic relationship. *Sojourner v. Sojourner*, 247 Miss. 342, 354, 153 So. 2d 803, 808 (1963) (citation omitted).

¶37. Carlson and Brabham admittedly had a confidential relationship as cohabitating couple. However, Brabham only promised Carlson that he would put her name on the deed to the property after her divorce. Carlson claims that she provided funds and labor to both the houses and Longhorn Logging because of Brabham's promise that they would get married. But Carlson fails to show she relied on Brabham's promise. Though Brabham did make the promise, Brabham could not fulfill this promise because Carlson remained married to her husband, Kenneth Carlson. Carlson may have invested in their relationship due to Brabham's promise of marriage, but Carlson's actions, not Brabham's, prevented the fulfillment of the promise.

¶38. Therefore, Brabham did not abuse the confidential relationship because Carlson knew her name would only be placed on the deed after she finalized her divorce. There was no

14

mistake of fact because Carlson continued to live with Brabham after he made his intentions clear. We agree with the chancellor's determination that Carlson failed to meet the necessary elements to compel a constructive trust. This issue is without merit.

> V. *Whether Carlson was entitled to a claim of sweat equity.*

¶39. Carlson's final claim is she contributed "sweat equity" in the properties and should receive compensation. Mississippi courts have not recognized claims of sweat equity to date. Carlson cites cases that merely mention the term sweat equity without making a ruling on the issue. In *Jordan v. Jordan*, 963 So. 2d 1235, 1247-48 (¶38) (Miss. Ct. App. 2007), this Court stated that Jordan "could possibly have a claim of 'sweat equity.'" However, the *Jordan* Court did not find a cause of action for sweat equity. *Id.* at 1248 (¶38). This Court once again mentioned "sweat equity" to quote a husband's characterization of his initial investment into a business he partially owned, but did not make an award on the basis of sweat equity. *Pittman v. Pittman*, 791 So. 2d 857, 865 (¶25) (Miss. Ct. App. 2001), *overruled on other grounds by Collins v. Collins*, 112 So. 3d 428, 432 (¶11) (Miss. 2013). Additionally, this Court has stated that awarding an equitable division to a party who "contributed no purchase funds and very little sweat equity in the property, would unjustly enrich [the party]." *Jones v. Graphia*, 95 So. 3d 751, 754-55 (¶11) (Miss. Ct. App. 2012) (affirming the chancellor's decision to deny a live-in girlfriend an equitable division based upon sweat equity and a joint tenancy after termination of the relationship).

¶40. Carlson claims that she accrued "sweat equity" through her physical labor in the parties' joint homes. Yet Brabham and the contractors he hired performed the overwhelming

majority of the construction on the house. At trial, the parties testified that multiple friends helped during the construction by performing similar tasks to what Carlson testified she did. Extending sweat equity to every individual who willfully helped on a project would surely be an inequitable remedy. Similarly to *Jones*, Carlson did not pay any of the purchase funds for the house at East Fork Road out of her personal account and contributed very little sweat equity.

¶41.     Carlson also claims she accrued sweat equity in Longhorn Logging. But as with her partnership and joint-venture claims in the business, Carlson failed to prove her contribution to  Longhorn Logging aside from her role of bookkeeper. This Court sees no reason that Carlson should be compensated by sweat equity in addition to the payments she already received from Longhorn Logging.

¶42.     Mississippi courts have yet to allow a cause of action for sweat equity, and the facts of this case do not warrant such a finding. Further, the chancellor correctly found the statute of limitations barred Carlson's claim. For these reasons, this Court finds that this issue is meritless.

¶43.     **THE JUDGMENT OF THE AMITE COUNTY CHANCERY COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT**.

       **LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR.   JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**