# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00374-COA

**MICHAEL J. MALOUF**                                                    **APPELLANT**

**v.**

**LISA EVANS D/B/A LAKE HARBOUR MARINE**                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2017 |
| CIRCUIT JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL J. MALOUF |
| | ROBERT EUGENE JONES II |
| ATTORNEY FOR APPELLEE: | CHRISTOPHER A. TABB |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 07/17/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     In June 2014, Michael Malouf filed a complaint against Lisa Evans, Lake Harbour Marine, and Michael Evans, in the County Court of Rankin County, alleging breach of contract, breach of good faith and fair dealing, breach of trust, breach of warranty, fraud, misrepresentation, deceit, deception, conversion, unlawful taking, unjust enrichment, assault, duress, negligence, and gross negligence.  In June 2016, upon the conclusion of Malouf's case in chief, the trial court granted Lisa's motion for a directed verdict, finding that there was insufficient evidence to prove that Lisa was in a business partnership with her husband, Evans, or that Lisa was responsible for any misrepresentations made on behalf of Lake Harbour Marine.  In July 2016, Malouf filed a motion for reconsideration, which was denied

by the trial court. Malouf appealed both the trial court's judgment and order denying the motion for reconsideration to the Circuit Court of Rankin County. The circuit court affirmed the decision of the county court. Malouf now appeals. After review of the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In May 2014, Malouf experienced issues with his boat. He took the boat to Mike Ivy, at Ivy Marine, to have the boat inspected. Ivy testified that he discovered the boat's engine was cracked and estimated the cost of repairs somewhere between $6,000 and $7,000. Malouf testified that Ivy stated he would make additional repairs and change the oil. However, both Ivy and Malouf testified that before committing to the repairs, Malouf wanted a second opinion.

¶3. Malouf then took his boat to Evans,[1] the owner of Lake Harbour Marine.[2] Malouf testified that Evans stated he would place a new 350 horsepower engine in the boat, and that total repairs would cost between $4,500 and $5,500. The agreement also stated that the repairs were to be completed by July 4, 2014.

¶4. Malouf testified that he attempted to contact Lake Harbour Marine several times to check on his boat; however, he was unable to reach anyone. Malouf stated that he visited Lake Harbour Marine on July 2, 2014, and encountered Lisa. Lisa informed him that the

[1] Evans died in 2014 after the complaint was filed but before the trial started in 2016. Malouf testified that he filed a claim against Evans's estate; however, the estate was insolvent.

[2] The record does not reflect that "Lake Harbour Marine" was a recognized business entity registered with the Mississippi Secretary of State's Office.

engine on the boat had not yet been replaced at that time. According to Malouf, he continued to call Lake Harbour Marine and always spoke with Lisa regarding the progress made on the repairs. During one of the phone calls, Lisa informed Malouf that his boat was being repaired; however, parts of the boat were missing. Malouf contacted Ivy Marine and located the parts, and Lisa arranged for her daughter to deliver the parts to Lake Harbour Marine. Malouf stated that Lisa requested he bring $3,850 in cash to pick up the boat, because of something negative Malouf's daughter allegedly posted on Facebook regarding Lake Harbour Marine's business practices. Malouf testified that after his conversation with Lisa, he continued to call Lake Harbour Marine for several days. However, he was unable to reach anyone.

¶5. On July 11, 2014, Malouf spoke with Lisa again, and Lisa directed him to her attorney, Chris Tabb. Tabb informed Malouf that he could pick up the boat later that day. Malouf, Mike Malouf Jr. (Mike Jr.), and an officer[3] from the Flowood Police Department traveled to Lake Harbour Marine to pick up the boat. Lisa gave Malouf an invoice representing that several repairs had been completed.[4] Mike Jr. and Malouf testified that they proceeded directly to the reservoir after retrieving the boat to test it. However, the boat

---

[3] Malouf and Mike Jr. testified that they both were involved in heated exchanges with Evans regarding the boat, so they thought it would be best to return with a police officer.

[4] The invoice stated that the following repairs were performed: installed a new 5.0 short block, installed 2 used manifolds and manifold risers, transferred heads and all electronics from busted block, replaced water pump impeller in outdrive, and complete fluid service. Malouf was also charged for a new oil filter and five quarts of oil.

would not accelerate over approximately five to ten miles per hour. The next day, Malouf returned the boat to Ivy Marine for further inspection.

¶6.     Ivy testified that one manifold had been replaced and the top part of the engine had been cleaned. However, Ivy noted that the engine had the same crack in the same spot as it did before Malouf took it to Lake Harbour Marine for repair. Ivy stated that the oil was black, and it appeared to be the same oil that he had placed in the boat a year prior. Further, Ivy noticed that the serial number had been removed from the cracked engine. As a result, Ivy performed the necessary repairs to Malouf's boat, after Malouf notified Lake Harbour Marine that they could inspect the engine to see whether it had been replaced. It was later determined that the engine had not been replaced. Malouf testified that he continued to send correspondence to Evans, Tabb, and Lake Harbour Marine regarding the misrepresentations.

¶7.     In August 2014, Malouf filed a complaint against Evans and Lisa, individually, and Lake Harbour Marine in the County Court of Rankin County, alleging breach of contract, breach of good faith and fair dealing, breach of trust, breach of warranty, fraud, misrepresentation, deceit, deception, conversion, unlawful taking, unjust enrichment, assault, duress, negligence, and gross negligence.

¶8.     In June 2016, a jury trial was held against Lisa, individually, and Lake Harbour Marine. Upon the conclusion of Malouf's case-in-chief, the trial court granted Lisa's motion for a directed verdict, finding that there was insufficient evidence to prove that Evans and Lisa were in a partnership or that Lisa was responsible for any misrepresentations made on

behalf of Lake Harbour Marine. In July 2016, Malouf filed a motion for reconsideration, which the trial court denied. Malouf appealed both the trial court's judgment and order denying the motion for reconsideration to the Circuit Court for Rankin County. The circuit court affirmed the decision of the county court. Malouf appeals.

## STANDARD OF REVIEW

¶9.     "The standard of review for a trial court's grant or denial of a motion for a directed verdict is de novo." *Harris v. Michael*, 211 So. 3d 732, 734 (¶6) (Miss. Ct. App. 2016).

## DISCUSSION

**I.      Whether the trial court erred in granting Lisa's motion for directed verdict.**

¶10.    Malouf asserts that the trial court erred in granting Lisa's motion for a directed verdict because there was evidence for a jury to find that Lisa was liable for his damages. However, the trial court ruled that in order for Lisa to be liable for Malouf's damages, Malouf would have had to prove that Lisa and Evans were in a partnership. The trial court determined that no evidence of a partnership had been presented.

¶11.    "Mississippi Code Annotated section 79-13-202(a) (Rev. 2013) [describes] a partnership as 'the association of two or more persons to carry on as co-owners [of] a business for profit.'" *Carlson v. Brabham*, 199 So. 3d 735, 740 (¶17) (Miss. Ct. App. 2016).[5] Further, in *Carlson*, this Court held:

---

[5] The definition is provided in Mississippi Code Annotated section 79-13-101(6) (Rev. 2013).

5

The three main questions that are considered in partnership determination are (1) the intent of the parties, (2) the control question, and (3) profit sharing. The intent required to form a partnership may be implied. However, profit sharing may be the most important factor. A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment of wages or other compensation to an employee.

*Id*. (citations omitted).

### A. Intent

¶12. At trial, Malouf presented evidence and testimony that he interacted with Lisa on several occasions. Justin Atwood, a former employee of Lake Harbour Marine, testified that Lisa would come to the shop every day to help with the books and any other tasks that Evans asked of her, because there was no bookkeeper or secretary. However, the trial court noted that Lisa did not conduct any business without Evans's approval, nor did she assist with any repairs. Furthermore, Lisa never identified herself as an owner of Lake Harbour Marine–even though Malouf disputed that assertion.

¶13. Also, the trial court found that there was no evidence presented at trial that Lisa and Evans intended to run the business as partners. Furthermore, Malouf did not submit any evidence of a written agreement among Lisa, Evans, and Lake Harbour Marine. After weighing the evidence, the trial court found that Malouf did not present sufficient evidence to prove the intent requirement.

¶14. Accordingly, this Court finds this issue is without merit.

### B. Control

¶15. Malouf asserts that Lisa controlled the day-to-day operations at Lake Harbour Marine; therefore, a valid partnership was formed between Lisa and Evans. However, outside of bookkeeping and writing invoices, no testimony was presented that Lisa controlled any other aspect of the business. This Court has held that "while control is indicative of the existence of a partnership, control by itself is not the exclusive indicator of partnership." *Carlson*, 199 So. 3d at 741 (¶22). Evidence presented at trial demonstrated that Lisa always spoke to Evans before writing the invoices for Malouf. Malouf testified that Lisa held herself out as part-owner; however, the trial court found his testimony unpersuasive. Atwood testified that, at times, Lisa was at the business every day; he explained that she "helped out with paperwork." Atwood also testified that Lisa and Evans spoke about Malouf's boat repair; however, he did not know how detailed those conversations were.

¶16. The dissent mentions that Atwood also testified that Lisa would bring the shipments in and file them and that Lisa did most of the paperwork. However, the trial court was not persuaded by that testimony. Moreover, Atwood was not allowed to testify regarding if Lisa knew whether the engine had been replaced because he lacked personal knowledge.

¶17. Additionally, the letter Malouf sent to Evans, Tabb, and Lake Harbour Marine did not mention Lisa's name. The trial court found the letter to be very persuasive because the letter neither mentioned Lisa's name independently in a partnership with Evans nor Lake Harbour Marine. Malouf testified that although Lisa's name was left off the letter to Lake Harbour Marine, he considered Lisa to be "Lake Harbour Marine" and in control over the business.

The trial court found Malouf's testimony unpersuasive and unsubstantiated. Further, the court stated that the problem with Malouf's testimony was that it related to what happened to Lake Harbour Marine after Evans died; however, the events in question occurred while Evans was still alive. It did not appear that Lisa had control over the business while Evans was alive.

¶18. Accordingly, after review of the record, we find that Malouf failed to prove that Lisa controlled the direction of the business.

### C. Profit Sharing

¶19. Malouf asserts that Lisa and Evans were sharing profits because she was awarded a truck and money from the business after Evans died. However, the trial court determined that Malouf failed to show that Lisa and Evans shared profits from the business simply because they were married or that she received profits after Evans's death. Malouf asserts that he gave Lisa the money for the repairs; however, it is unclear what happened with the money once it fell into Lisa's possession—although Malouf stated he believed the money went into a safe. The trial court found that Malouf's evidence of Lisa taking money and putting it in a safe was "post debt" and did not reflect that Lisa and Evans shared profits. This Court has held that "[o]f the three factors, profit sharing is the most important one in determining whether a partnership exists." *Carlson*, 199 So. 3d at 742 (¶25).

¶20. In *Carlson*, "[the plaintiff] received checks for bookkeeping services." *Id*. As a result, the trial court found that she could only prove profit sharing. *Id*. at (¶26). In this case,

8

Malouf presented no evidence that Lisa shared any profits from Lake Harbour Marine with her husband. Moreover, we have held that "[a] person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment of wages or other compensation to an employee." *Id.* at 740 (¶17) (citing Miss. Code Ann. § 79-13-202 (c)(3)(ii)). Malouf did not present evidence to establish that Lisa was more than an employee.

¶21. As a result, the trial court determined that Malouf's argument that Lisa was in a partnership with Evans was speculative at best. Accordingly, we find that the trial court correctly found that Malouf failed to prove that Lisa and Evans were involved in a partnership.

**II.** **Whether Malouf's claim is viable under the Uniform Partnership Act.**

¶22. The dissent argues that Malouf presented sufficient evidence to withstand Lisa's motion for directed verdict under the Uniform Partnership Act.

¶23. The dissent writes that "Lisa gave Malouf an invoice apparently written in her handwriting that represented that Lake Harbour Marine replaced Malouf's old engine with a 'new short block.'" *Post* ¶44. As a result, the dissent maintains that there is sufficient evidence that Lisa held herself out to be a partner (or joint venturer), by words or conduct, and Malouf relied to his detriment on her representation. However, the evidence does not quite support that theory.

¶24. Testimony supports that Lisa created the receipt after a conversation with Evans—not

9

after completing her own thorough analysis of the agreement between Evans and Malouf or the condition of the boat. Furthermore, this Court should not hold employees liable as "partners" for simply supplying receipts to customers. The evidence presented nothing more than an employee status. An argument that Malouf relied upon Lisa's receipt alone regarding the work to have been completed on his boat is misleading. Moreover, the trial court found that Lisa was not liable as a "joint venturer."

¶25. "A joint venture has been broadly defined as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, efforts, skill and knowledge." *Pennebaker v. Gray*, 924 So. 2d 611, 618 (¶22) (Miss. Ct. App. 2006) (internal quotation mark omitted). Here, the trial court courted weighed the testimony submitted in Malouf's case-in-chief and determined that Malouf failed to make a prima facie showing that Lisa committed fraud or was guilty of misrepresentation. Therefore, the trial court did not just simply "ignore[] Malouf's proof of other theories of liability." *Post* ¶44.

¶26. Malouf maintains that Lisa presented herself as a purported partner. Under Mississippi Code Annotated section 79-13-308 (Rev. 2018):

> if a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership.

¶27. Here, the trial court found that the evidence supported that Lisa was not a purported

10

partner—even if she participated in counting inventory, collecting money, and writing receipts. *See Carlson*, 199 So. 3d at 742 (¶¶22-23) (finding that bookkeeping and handling finances did not equate to controlling an aspect of a business). Accordingly, we find this issue is without merit.

### III. Whether the trial court made inferences favorable to Lisa.

¶28. Malouf further asserts that the trial court erred in making inferences favorable to Lisa. Malouf states that on a motion for a directed verdict, the trial court is required to consider the evidence presented, together with any reasonable inference, in the light most favorable to Malouf. The Mississippi Supreme Court has stated:

> The trial judge is to look solely to the testimony on behalf of the party against whom a directed verdict is requested. He will take such testimony as true along with all reasonable inferences which can be drawn from that testimony which is favorable to that party, and, if it could support a verdict for that party, the directed verdict should not be given. If reasonable minds might differ as to this question, it becomes a jury issue.

*Harris*, 211 So. 3d at 734 (¶6).

¶29. The trial court heard the evidence and testimony presented by Malouf. The court acknowledged that Malouf had been "hoodwinked, bamboozled, and cheated" out of his money. However, the trial court found that Malouf could not prove that Lisa had any knowledge of the misrepresentations made by Evans or Lake Harbour Marine.

¶30. As a result, the trial court found that Malouf failed to submit any proof, other than speculation and inference, that a partnership between Lisa and Evans had been established. Therefore, viewing the evidence in the light most favorable to Malouf, we are of the opinion

11

that reasonable minds could not differ as to whether Lisa and Evans were partners. As a result, the issue of whether Lisa was liable for Malouf's damages did not have to be submitted to a jury.[6] Accordingly, we find no error in the trial court's decision to enter the directed verdict.

¶31. **AFFIRMED.**

**IRVING, P.J., BARNES, WILSON AND TINDELL, JJ., CONCUR. GREENLEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., GRIFFIS, P.J., AND CARLTON, J. FAIR, J., NOT PARTICIPATING.**

**GREENLEE, J., DISSENTING:**

¶32. I respectfully dissent. The trial judge in this case failed to consider and apply the Uniform Partnership Act ("UPA"), and only focused on whether Malouf proved that Lisa Evans was a partner in Lake Harbour Marine. Malouf's trial proceeded against Lisa individually and d/b/a Lake Harbour Marine. Lisa was sued individually and "doing business as" Lake Harbour Marine. The UPA recognizes multiple theories of liability under which Lisa may be held liable: she may be liable as a partner,[7] a joint venturer,[8] or as a purported partner.[9] Malouf presented evidence at trial that Lisa acted and presented herself as a partner or joint venturer and evidence that Malouf relied to his detriment on her representation. In

---

[6] Malouf also asserts that the trial court erred in not allowing the case to be submitted to a jury; however, we disagree with this assertion.

[7] Miss. Code Ann. § 79-13-306(a) (Rev. 2013).

[8] *Barrett v. Jones*, 27 So. 3d 363, 372 (¶31) (Miss. 2009).

[9] Miss. Code Ann. § 79-13-308(a) (Rev. 2013).

12

granting Lisa's directed verdict, the trial judge determined that Lisa and Mike Evans were not partners, even though Lisa put on no proof. In deciding whether a directed verdict is appropriate, we consider the evidence favoring the nonmovant as true and give the nonmovant the benefit of all reasonable inferences in their favor. *Thompson v. Dung Thi Hoang Nguyen*, 86 So. 3d 232, 236 (¶12) (Miss. 2012). I would therefore find that Malouf presented sufficient evidence to withstand Lisa's motion for a directed verdict.

**FACTS**

¶33.    Malouf sued both Evans and Lisa individually and d/b/a Lake Harbour Marine. Prior to trial, a suggestion of death was filed stating that Evans died. Malouf did not move to amend his complaint to substitute Evans's estate as a defendant. After the court dismissed Evans as a party, the trial went forward against Lisa d/b/a Lake Harbour Marine.

¶34.    During trial, Malouf testified that he originally took his boat to Ivy Marine, after he experienced issues with his boat. Upon inspection of Malouf's boat, Mike Ivy, the owner of Ivy Marine, discovered a crack in the engine block. Ivy estimated repairs would cost between $6,000 and $7,000. Ivy also offered to make additional repairs and change the boat's oil. However, Malouf wanted a second opinion before he committed to the repairs. Malouf testified that he then took his boat to Evans, at Lake Harbour Marine. Malouf stated that Evans agreed to replace his boat engine with a new 350-horsepower engine, and that the estimated cost would be between $4,500 and $5,500, with repairs to be completed by July 4, 2014. Malouf signed a work order and paid Lake Harbour Marine $2,000 in order for Lake

13

Harbour Marine to start work on his boat.

¶35. Malouf said he attempted to check on his boat several times while it was at Lake Harbour Marine. He stated that he called several times but got no response. He then went by Lake Harbour Marine, and Lisa told him to speak with Evans, who was in the back of the shop. Malouf found Evans and explained that he was preparing to leave town but wanted to make sure that his boat would be ready by July 4. Malouf said that Evans pointed to an old engine sitting on a wood pallet, stating "that's your engine right there." Malouf responded that it was not a new engine. Evans disagreed, promising it was. After Malouf again questioned whether the engine on the wood pallet was the proper replacement, Evans threatened Malouf and told him to get off his property. Malouf testified that following this incident, Lisa became his primary contact throughout his dealings with Lake Harbour Marine.

¶36. Malouf testified that he and Lisa had numerous conversations about repairing his boat. Malouf stated that:

> [Lisa] knew what was going on, acted like it. She acted like she had authority telling me what to do, what to bring, how much money to come. She said we're working on the boat; it'll be ready now and then. She acted like she was an owner, [and] presented herself as an owner.

Malouf further testified that Lisa demanded that he bring $3,850 in cash in order for him to pick up his boat. He said that in a later conversation, he requested Lisa send him an invoice so he could see what he was paying for but that she refused and instructed him to talk to her attorney, Chris Tabb. Malouf went to pick up his boat and paid $3,850 in cash. At that time,

14

Lisa presented Malouf with an invoice indicating that the short block in his boat's engine had been replaced. The invoice appeared to be written in Lisa's handwriting. After picking up his boat, Malouf took it to the reservoir and immediately discovered it did not function properly because it would not accelerate over approximately five to ten miles per hour.

¶37. The next day, Malouf took his boat to Ivy Marine for inspection. Ivy testified that he examined Malouf's boat, and that although one of the boat's manifolds had been replaced, the engine had the same crack in the same spot as before, and the engine's serial number had been removed. He concluded that Lake Harbour Marine did not replace Malouf's engine.

¶38. Justin Atwood also testified at trial. Atwood testified that he worked at Lake Harbour Marine in June 2014 and that, as an employee, he sold and assembled boats. Atwood said that during his time at Lake Harbour Marine, the business received shipments from United Parcel Service (UPS) almost daily and that Lisa would "bring [the shipments] in and file them[.]" Atwood stated that either he, Lisa, or Evans would check in purchased parts. He also said that Lisa tried to do most of the paperwork, and that if a boat came in that needed to be worked on, Lisa would check Lake Harbour Marine's inventory to see if parts needed to be ordered. Atwood testified that Lisa and Evans had many conversations about the repairs to Malouf's boat.

¶39. Following the conclusion of Malouf's case-in-chief, the trial court granted Lisa's motion for a directed verdict, finding there was insufficient evidence to prove that Evans and Lisa were in a partnership or that Lisa was responsible for any misrepresentations made on

15

behalf of Lake Harbour Marine. On July 18, 2016, the trial court entered a judgment dismissing Evans without prejudice and dismissing Lisa with prejudice. The judgment did not address Lake Harbour Marine. Malouf filed for a motion for reconsideration, which the trial court denied. Malouf then appealed both the trial court's judgment and the order denying the motion for reconsideration to the Rankin County Circuit Court. The circuit court affirmed the county court's decision, finding that Malouf failed to make a prima facie showing that Lisa committed fraud or was guilty of misrepresentation. Further, in affirming the county court's decision, the circuit court found that there was no evidence that Lisa knew or should have known that Evans failed to replace the motor as represented, or that Lisa knew that any of the representations she made were false. Malouf timely appealed.

## DISCUSSION

¶40.    We review de novo a trial court's grant or denial of a motion for a directed verdict. *Thompson*, 86 So. 3d at 236 (¶12). The Mississippi Supreme Court has stated that:

> in deciding whether a directed verdict should be granted, the trial judge is to look solely to the testimony on behalf of the party against whom a directed verdict is requested. He will take such testimony as true along with all reasonable inferences which can be drawn from that testimony which is favorable to that party, and, if it could support a verdict for that party, the directed verdict should not be given. If reasonable minds might differ as to this question, it becomes a jury issue.

*Solanki v. Ervin*, 21 So. 3d 552, 555 (¶8) (Miss. 2009) (quoting *White v. Thomason*, 310 So. 2d 914, 916-17 (Miss. 1975)). The supreme court has also held that "in considering the evidence and all reasonable inferences, the court must determine whether the evidence is so

16

overwhelmingly against the nonmovant that no reasonable juror could have found in [his] favor." *Id.*

¶41. In 2004, Mississippi adopted the "Uniform Partnership Act of 1997." Miss. Code Ann. §§ 79-13-101, *et seq.*[10] These provisions are a codification of common law that define and govern the operation of businesses explicitly and implicitly run as partnerships. A partnership is defined as "an association of two (2) or more persons to carry on as co-owners a business for profit . . . ." Miss. Code Ann. § 79-13-101(8) (Supp. 2017). Pursuant to Mississippi Code Annotated section 79-13-305(a) (Rev. 2013), "[a] partnership is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership." The UPA provides that "a partnership is an entity distinct from its partners." Miss. Code Ann. § 79-13-201(a) (Rev. 2013). Further, "[a] partnership may sue and be sued in the name of the partnership." Miss. Code Ann. § 79-13-307(a) (Rev. 2013). In order to satisfy a judgment against a partnership from a partner's assets, there must also be a judgment against the individual partner. Miss. Code Ann. § 79-13-307(c) (Rev. 2013).

¶42. The statutory provisions of the UPA are also applicable to joint ventures. *Barrett*, 27

---

[10] The Uniform Partnership Act (1997) became effective on January 1, 2005. Before January 1, 2007, the UPA applied to all partnerships formed after January 1, 2005; after January 1, 2007, the revised Act applies to all partnerships. Miss. Code Ann. § 79-13-1205 (Rev. 2013).

So. 3d at 372 (¶31). As our supreme court has noted, "[a] joint venture is a single-purpose partnership." *Id.* Under the UPA, "a joint venture is liable for any penalty incurred as the result of a wrongful act or omission, or other actionable conduct, of a joint venturer acting in the ordinary course of business of the joint venture." *Id.* (citing Miss. Code Ann. § 79-13-305(a).

¶43. In absence of a partnership in fact, a person can still be liable if he acts as a partner or joint venturer. *Allied Steel Corp. v. Cooper*, 607 So. 2d 113, 118 (Miss. 1992). Mississippi Code Annotated section 79-13-308(a) states:

> If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership. . . . If partnership liability results, the purported partner is liable with respect to that liability as if the purported partner were a partner. If no partnership liability results, the purported partner is liable with respect to that liability jointly and severally with any other person consenting to the representation.

¶44. In affirming the trial court's decision to grant Lisa's motion for a directed verdict, the majority only considers whether Malouf presented sufficient evidence of an actual partnership between Evans and Lisa. However, as discussed above, that is not the only test of determining Lisa's liability. Under section 79-13-308(a), Lisa is personally liable to Malouf if she held herself out to be a partner (or joint venturer), by words or conduct, and Malouf relied to his detriment on her representation. Taking the testimony Malouf presented as true, and giving Malouf the benefit of all favorable inferences that can be drawn

18

therefrom, a reasonable juror could have found that Lisa, through words or conduct, represented herself as Mike's partner, and that Malouf relied on Lisa's representation to his detriment. Further, a reasonable juror could have found that Lisa knew or should have known that Malouf's boat engine had not been replaced, given her regular involvement in Lake Harbour Marine's activities. In dismissing Lisa as a defendant, the county court only looked at whether Lisa was proved to be a partner and ignored Malouf's proof of other theories of liability. Further, the circuit court, in affirming the county court, ignored any basis of liability on Lake Harbour Marine's part. Instead, the circuit court found that Malouf did not present a prima facie case of fraud or misrepresentation. The majority does not reach this issue, but the record indicates that Malouf presented sufficient evidence to withstand Lisa's motion for directed verdict. Notably, the evidence showed that Lisa gave Malouf an invoice apparently written in her handwriting that represented that Lake Harbour Marine replaced Malouf's old engine with a "new short block."  I would therefore reverse the judgments and remand for a new trial in county court.

¶45.    Notwithstanding the evidence of Lisa's liability, the trial court's judgment did not dismiss Lake Harbour Marine as a defendant. Under section 79-13-307(a) a partnership may be sued in the name of the partnership. Therefore, this case involved three defendants: Mike, Lisa, and Lake Harbour Marine. Following the trial court's dismissal of Mike without prejudice, the trial proceeded against Lisa and Lake Harbour Marine. The trial court determined that Lisa was not a partner. However, it did not determine that Lake Harbour

19

Marine was *not* a partnership, nor did it specifically dismiss Lake Harbour Marine from the suit. Instead, the trial court apparently determined that dismissing Lisa impliedly dismissed Lake Harbour Marine from the lawsuit as well. As previously noted, the UPA states that a partnership may be sued and be held liable independent of any partner. Malouf's proof more than adequately demonstrated that Lake Harbour Marine charged for work not performed. In considering the evidence and all reasonable inferences favorable to Malouf, a reasonable juror could have found in Malouf's favor. As the courts below viewed the case as being dismissed, we should reverse and remand. I respectfully dissent.

**LEE, C.J., GRIFFIS, P.J., AND CARLTON, J., JOIN THIS OPINION.**